Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued September 13, 2004       Decided November 5, 2004

No. 03-1295

DELTA RADIO, INC.,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

MONDY-BURKE BROADCASTING NETWORK,
INTERVENOR

————

Appeal of an Order of the
Federal Communications Commission

————

*Stuart W. Nolan, Jr.* argued the cause for appellant. With him on the briefs were *Barry D. Wood* and *Ronald D. Maines.*

*C. Grey Pash, Jr.*, Counsel, Federal Communications Commission, argued the cause for appellee. On the brief were

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*John A. Rogovin*, General Counsel, *Daniel M. Armstrong*, Associate General Counsel, and *Louis E. Peraertz*, Special Counsel.

*Lauren A. Colby* was on the brief for intervenor.

Before: SENTELLE, TATEL and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Delta Radio, Inc. ("Delta") appeals from a Federal Communications Commission's ("FCC" or "Commission") order denying its request for a waiver of the payment deadline of its winning auction bid. *See* Memorandum Opinion and Order, *In re Application of Delta Radio, Inc.*, 18 FCC Rcd 16,889 (2003) ("Order"). In the Order, the FCC held that lack of finality and "other intervening events" did not excuse late payment, either singly or in combination. Delta Radio contends that the FCC abused its discretion by failing to give Delta's waiver application a "hard look," inconsistently applying a strict waiver policy, and denying the waiver when there was still an outstanding application for review and the attacks of September 11, 2001 had affected the economy. Because the FCC adequately considered Delta's arguments and applied its waiver policy consistently, we affirm the order of the Commission.

## I.  Background

Delta's appeal arises from its winning bid for an FM broadcast construction permit in an FCC auction. In 1998, the Commission adopted rules governing the post-auction processing of broadcast applications. *See Implementation of Section 309(j) of the Communications Act — Competitive Bidding for Commercial Broadcast and Instructional Fixed Services*, 13 FCC Rcd 15,920 (1998) ("*Implementation*"). These rules are designed to "ensure that only serious, financially qualified applicants receive licenses and construction permits, and to expedite provision of service to the public." *In re Application of Abundant Life*, 17 FCC Rcd 4006, 4008 (2002).

At several stages in the auction process participants are required to make payments to ensure their continued financial capability and sincerity. Before bidders may participate, they must submit an upfront payment to be held on deposit with the FCC until the end of the auction. 47 C.F.R. § 1.2106; 47 U.S.C. § 309(j)(8)(C); *Implementation* at 15,-951. Within ten days of being notified that it is the high bidder, the auction winner must deposit a 20% down payment to prove that it is still financially capable of building a station. 47 C.F.R. at § 1.2107(b); *Implementation* at 15,983. The final payment deadline is set by Public Notice once the FCC has dismissed all petitions to deny the high bidder's application. 47 C.F.R. at §§ 1.2109(a), 73.5006(d). If the auction winner is late but makes its final payment within a ten-day grace period, it will be charged an additional 5% late fee. *Id.* at § 1.2109(a). After ten days, the high bidder is considered in default, subject to an additional penalty charge, and the FCC may offer the permit to the next highest bidder or hold a new auction. *Id.* at § 1.2109(b).

The FCC considers timely payment important for several reasons: it contributes to the overall integrity of the auction process, *Abundant Life*, 17 FCC Rcd at 4012; serves as an "objective indicator" of a winning bidder's financial qualifications, *id.*; and evidences the sincerity and financial capability of the winning bidder to actually "build out" its system to ensure prompt service reaches the public. *See In re Mountain Solutions, Ltd.*, 133 FCC Rcd 21,983, 21,993 (1998).

In April 1995, Delta and Mondy–Burke Broadcasting Network ("MBN") filed mutually exclusive applications for an FM broadcast construction permit in Greensville, Missouri. This permit was to be awarded by an auction ending October 8, 1999. *Public Notice*, "Closed Broadcast Auction No. 25 Closes," 14 FCC Rcd 17,186 (1999). Delta placed the winning bid of $397,000 and made its post-auction down payment of $79,400. *See Letter to Mr. Larry G. Fuss and Mr. Barry D. Wood, Esq. from Peter H. Doyle, Chief, Audio Division, Office of Broadcast License Policy, Media Bureau*, 17 FCC Rcd 19,029, 19,032 (2002). On December 10, 1999, MBN filed a petition to deny Delta's application, arguing that Delta had

violated FCC ownership rules, was not financially qualified, and did not intend to build the Greenville Station but only to block competitors from doing so. The FCC denied the petition on May 17, 2000. MBN filed an application for review of that denial on June 15, 2000. While this application was still pending and the permit had not yet been granted, the September 11 terrorist attacks on the United States occurred, triggering a sudden downturn in the national economy.

On March 7, 2002, the Media Bureau ("Bureau") released a Public Notice stating that Delta's final payment, as well as those of two other winning bidders, would be due on March 21, 2002. *Public Notice*, "FCC Announces it is Prepared to Grant Broadcast Construction Permits After Final Payment is Made," 17 FCC Rcd 4278 (2002). The other two winning bidders timely paid the balance of their bids. On April 4, at the end of the ten-day grace period, Delta submitted to the Bureau a petition for reconsideration and waiver requesting either rescission of the Public Notice triggering the deadline, or a temporary waiver of the payment deadline. It argued that several factors contributed to its inability to pay, including some created or exacerbated by the FCC itself. First, Delta claimed that it was unable to secure financing due to the uncertainty of its claim on the permit because MBN's application for review was still pending before the Commission. It also alleged that the FCC's delayed action on this application for review exacerbated the uncertainty surrounding the permit. Delta pointed next to the economic downturn following the attacks of September 11 as the reason its financing had fallen through and argued that this was so unique as to warrant a waiver. In the alternative Delta claimed the uniqueness of all these factors occurring simultaneously should be enough to support a waiver, even if the individual factors were not. Finally, it argued that the FCC had previously granted a "de facto" waiver to another Auction 25 participant by not setting the payment date until after the award became final, and thus it would not be fair to deny a waiver to Delta. The Bureau rejected Delta's petition on August 27, 2002 and offered the permit to MBN as the

second-highest bidder, assessing a default penalty against Delta. *Letter to Mr. Larry G. Fuss, et al., from Peter H. Doyle, Chief, Audio Division, Office of Broadcast License Policy, Media Bureau*, 17 FCC Rcd 16,324 (2002).

On September 26, 2002, Delta applied for review of the Bureau's decision on the grounds that it used an improper standard of review and was again denied on October 2. *Letter to Mr. Larry G. Fuss, et al.*, 17 FCC Rcd 19,029 (2002). Delta filed a petition for reconsideration with the FCC on November 1, 2002 that was denied August 20, 2003. Order, 18 FCC Rcd 16,889. The Commission held that the proper standard of review had been used. It further addressed Delta's concerns about lack of finality because of delay in responding to the application for review, the economic effects of September 11, and the presence of multiple factors at once arguably mitigating Delta's default. It also distinguished the cases Delta claimed were similar in which waivers had been granted and pointed to other similar bidders whose payment deadlines had not been waived. Delta sought timely appeal.

## II. Analysis

We review the FCC's denial of a waiver in an "extremely limited" fashion, and will "vacate such denials only when the agency's reasons are so insubstantial as to render that denial an abuse of discretion." *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1181–82 (D.C. Cir. 2003) (internal quotation marks omitted). The FCC *may* grant a waiver when "special circumstances" warrant it and the waiver will "serve the public interest." *Northeast Cellular Telephone Co., L.P. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990). We will not compel the Commission to grant a waiver, however, as long as the request was given at least a "hard look" to ensure that the agency is not rigidly applying a rule where it is not in the public interest. *See BDPCS*, 351 F.3d at 1182; *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C. Cir. 1999). This does not require that the agency "author an essay" in response to every allegation;

rather, it must explain itself in enough detail so that a court can determine "the why and wherefore" of the denial — explaining, for example, why strict rule application serves the public interest. *BellSouth*, 162 F.3d at 1224–25. Given this limited review, we hold that the FCC did not abuse its discretion in failing to grant Delta a waiver of its payment obligations or in assessing the statutory default penalty when Delta failed to meet payment deadlines.

Delta first argues that the FCC was in error because it failed to grant the requested waiver of the payment deadline and default payment when Delta presented numerous reasons for such a waiver to be granted, including allegations that the Commission's own delay in action in the case made timely payment impossible. It insists that the FCC's policy goal of ensuring sincere and adequately financed bidders would be better served by a rule judging financial fitness based on a company's track record than by the current rule that emphasizes timely payment of auction obligations. This argument, however, misunderstands the nature of our review. We sit not to judge the wisdom of the FCC's payment rules but to determine whether this decision was an abuse of discretion. Thus we will only examine the record to determine whether the Commission has given support for its decision, not to second-guess its conclusions.

More to the point, Delta argues that the FCC's decision is an abuse of discretion because it failed to give Delta's arguments a "hard look" and did not follow its own precedent. Delta contends that the Commission did not adequately consider the waiver request, but simply reasserted its desire to strictly apply its payment rules, "trumping" the possibility of granting waivers altogether. This misrepresents the Commission's actual order which adequately considered all of Delta's arguments in turn and explained its reasoning. We cannot conclude that the FCC did not adequately consider Delta's arguments simply because it did not agree with them. Nor do we find that the Commission has been inconsistent in its application of the rules.

The FCC's policy is to grant waivers only for cases in which administrative error caused the due date to be missed. *In re Application of Winstar*, 17 FCC Rcd 6126, 6128–29 (2002). It has determined that a policy of strict adherence to payment deadlines is necessary to serve the public interests of "integrity, fairness, and efficiency of the auction process." *Id*. at 6130. While Delta insists that this interpretation unjustly eliminates the possibility of waiver altogether, the strict application of a rule is not *per se* an abuse of discretion but "may be justified by the gain in certainty and administrative ease, even if it appears to result in some hardship in individual cases." *BellSouth*, 162 F.3d at 1225 (quoting *Turro v. FCC*, 859 F.2d 1498, 1500 (D.C. Cir. 1988)). As long as the agency has articulated a not "insubstantial" reason for its strict application of a rule and applies the rule consistently, we will not overturn it. *Mountain Solutions*, 197 F.3d at 517.

The FCC's policy is clearly articulated in this case. True, the Commission does not elaborate on the reasoning behind its waiver policy in the Order. But it refers Delta to its holdings in previous decisions, quoting the text that explains its limitations on waivers. Order, 18 FCC Rcd at 16,892 n.23. The decisions it cites give further support for the FCC's policy. The Order separately analyzes each factor cited by Delta to support a waiver, and shows why it did not find them persuasive singly or in combination to create an exception to the normal payment rules. *Id.* at 16,892–94. There can be no doubt that the Commission gave all Delta's arguments sufficient consideration in its Order.

Delta further asserts that the FCC's policies were not consistently applied. Yet, as the FCC points out, there is ample precedent involving other Auction 25 bidders who were refused waivers while their permits, like Delta's, were still subject to administrative challenge. *See In re Abundant Life*, 17 FCC Rcd at 4012; *Winstar*, 17 FCC Rcd at 6128–29. The winning bidder in *Abundant Life* faced nearly identical circumstances to Delta's, including an almost year-and-a-half delay between auction and notice of time for final payment. *Abundant Life*, 17 FCC Rcd at 4006–07. Similarly, another bidder had challenged Abundant Life's bid, was rejected, and

submitted an application for review. *Id*. During the pendency of judicial review of the Commission's determination, Abundant Life was required to make its final payment. *Id*. at 4007. The FCC explained that to delay issuing permits until all possible administrative and judicial review was complete would be a blow to the Commission's stated goals of efficiency and quick delivery of service to the public. *Id*. at 4008–09. Furthermore, although Abundant Life could lose its permit in the judicial proceedings, prior payments would then be refunded eliminating the risk of forfeiture. *Id*. at 4012. The facts in *Winstar* are similar, and the FCC's ruling was the same: a lack of finality is not proper grounds to warrant a waiver of payment requirements. *Winstar*, 17 FCC Rcd at 6127–29.

The same answer holds true in the instant case. When payment was due, MBN's petition to deny Delta's application had been rejected and its application to review was pending. When the Public Notice was given, almost two-and-a-half years after the auction, Delta realized it would not be able to pay on time and requested a waiver. The FCC had already applied its strict payment rules to other participants in the same auction and simply followed its own precedent with Delta's request. It would have been arbitrary and inequitable to do otherwise.

Delta argues that the FCC has granted waivers under similar circumstances in previous decisions. The cases cited by Delta, however, are distinguishable. In one, high bidders who had made substantial down payments on their licenses were prepared to pay, but their licenses could not be issued because of a Supreme Court challenge by a former licensee. *In re Disposition of Down Payment and Pending Applications By Certain Winning Bidders in Auction No. 35*, 17 FCC Rcd 23,354, 23,355–59 (2002). The FCC offered to refund deposits and down payments of those bidders who wanted to relinquish their rights to the auctioned licenses to obtain closure in the matter. *Id*. at 23,359–62. That case represents a unique circumstance in which the FCC offered relief to a group of affected bidders by dismissing their applications, not delaying payment. Delta, in contrast, faced

no such challenge and was simply unprepared to make its final payment when it came due.

Delta also inappropriately analogizes its case to *In re Application of Anchor Broadcasting*, 16 FCC Rcd 8167 (2001). In that case, before the Public Notice was issued Anchor Broadcasting sought a declaration that payment would not be due until all appeals were final. *Id.* The FCC did not grant the waiver, but later dismissed the case as moot because by the time of the Public Notice's issuance, Anchor Broadcasting was able to pay. *Id.* at 8168. While Delta argues that this constituted a "de facto" waiver, in reality it simply represents another example of a bidder who was not given a waiver despite outstanding appeals. Delta fits squarely into the FCC's precedent for circumstances that do not warrant a waiver of payment.

The FCC rightly refuses to grant waivers when a winning bidder's action is "the sort [its] rules are intended to deter." *BDPCS*, 351 F.3d at 1182. Thus waivers are not granted "where it appeared that the party requesting waiver did not have funds on hand on the date of the payment deadline." *Abundant Life*, 17 FCC Rcd at 4011. Delta complains that the FCC's strict deadlines would require a high bidder to "horde (sic) an amount of cash equal to its bid in a fire-proof vault" until payment became due, but in fact it requires no more than any contract. When a company agrees to make a payment in the future, it is assuming the risk that the economy will change. It is free to safeguard its payment any way it likes, by locking it in a vault, putting it in a bank account, or trusting it to the stock market, but if the money is not available when payment becomes due there are consequences. The uncertain date of payment does not change this business reality; it is simply one more factor Delta should have taken into consideration when making its auction bid. Neither is the unpredictable nature of the September 11 attacks an excuse: Delta does not claim that it had secured financing and then lost it as a direct result of the attacks, but blames the general market downturn for its inability to pay. All bidders must take market volatility into account; Delta apparently failed to do so. Entering the auction unprepared

to pay on schedule is precisely the kind of conduct the FCC rules are designed to deter.

## III.   Conclusion

For the reasons expressed above, we affirm the order of the Commission.