In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2246

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

QUBID M. COLEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois, Rock Island Division.
No. 4:12-CR-40031-SLD-JEH-6 — **Sara Darrow**, *Judge.*

ARGUED NOVEMBER 9, 2015 — DECIDED NOVEMBER 24, 2015

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
SHAH, *District Judge.*[*]

SHAH, *District Judge.* Faced with a mandatory life sentence, Qubid Coleman agreed to cooperate with the government, signed a plea agreement, and entered a plea of guilty to a drug conspiracy charge. The plea agreement con-

_____

[*] Of the Northern District of Illinois, sitting by designation.

tained a waiver of Coleman's right to collaterally attack his conviction or sentence. At the guilty-plea hearing, Coleman said that he reviewed the agreement, understood it, and talked about it with his lawyer, but the district judge did not expressly discuss the collateral-attack waiver with Coleman. At sentencing, the district court imposed conditions of supervised release that included conditions that have since been determined to be impermissibly vague (and the court did not expressly tailor the conditions to an assessment of the factors in 18 U.S.C. § 3553(a)).

Although the plea colloquy did not track Federal Rule of Criminal Procedure 11 with respect to the collateral-attack waiver, we affirm the conviction because the omission did not affect Coleman's substantial rights. But we remand for resentencing in light of our recent decisions concerning the imposition of conditions of supervised release. *E.g., United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015).

**I**

Coleman was a runner for a drug conspiracy organized by his brother, Frederick Coleman, and Jerry Brown. Coleman's role was to deliver crack to customers in Kewanee, Illinois, collect money from the sales, and give the proceeds to his brother and Brown.

Shortly after indictment, Coleman's lawyer sought an evaluation of Coleman's competency. The evaluator determined that Coleman was malingering. Coleman's lawyer sought another evaluation, but Coleman refused to cooperate with the second doctor and his own counsel. Eventually, Coleman's case was severed from his co-defendants', the court found Coleman to be competent, and Coleman admit-

ted that his refusal to engage with the process was just an act.

Coleman's brother, his partner, and other runners were convicted at trial, and as Coleman later put it in his own words at his sentencing hearing, he "just had to come to [his] senses and do the right thing." He entered into a plea agreement with the government. In the agreement, Coleman admitted to his role in the conspiracy, and also admitted that his relevant conduct involved at least 280 grams of crack cocaine. He acknowledged that he faced a mandatory minimum sentence of life imprisonment because he had two or more prior convictions for a felony drug offense. 21 U.S.C. §§ 841(b)(1)(A), 846. Coleman agreed to cooperate with law enforcement officials in the hopes of a reduced sentence, and the agreement contained waivers of the right to appeal and to collaterally attack the conviction and sentence.

The collateral-attack waiver provided, in part:

> The defendant and the defendant's attorney have reviewed [28 U.S.C. § 2255], and the defendant understands the defendant's rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the defendant's right to collaterally attack the conviction and/or sentence. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of

the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives the defendant's right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include the defendant's right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under [§ 2255], excepting only those claims which relate directly to the negotiation of this waiver itself.

At his change-of-plea hearing—after taking the oath to tell the truth—Coleman said he could read and write in English, and he understood his plea agreement. He confirmed that his lawyer read the plea agreement to him verbatim. The court asked Coleman if he had "gone over in detail the waivers, the appellate waiver provisions with [counsel] in your plea agreement," and Coleman said he had. The court then advised Coleman that "you're waiving almost all of your rights to appeal any sentence that the Court might impose in this case," and, "You're reserving just one small right to appeal, and that's in [counsel's] representation of you in negotiating this plea agreement itself." But the court did not address the collateral-attack waiver. At the end of the colloquy, Coleman pleaded guilty.

At sentencing, the government made a motion to reduce Coleman's sentence based on his substantial assistance in the investigation or prosecution of others, and the district court noted that such a motion was "a gift" because "most people in [Coleman's] shoes would be going away for life." The court found that Coleman lied during his competency proceedings and faked being mentally ill. His stubbornness persisted until he had a "breakthrough" when his co-defendants were found guilty at trial. Nevertheless, because his assistance led to a new charge against another person, the court granted the government's motion and sentenced Coleman to 324 months' imprisonment.

The court then imposed a ten-year term of supervised release that included "standard conditions." In its oral pronouncement of these conditions, the court did not discuss 18 U.S.C. § 3553(a) or describe what the "standard conditions" were.

Coleman did not object to the plea colloquy or the conditions of supervised release. He now appeals both his conviction and sentence, arguing that his plea colloquy did not inform him of the collateral-attack waiver as required, and that several conditions of his supervised release are unconstitutionally vague.

## II

Before a district court accepts a guilty plea, Rule 11 requires it to address the defendant personally in open court and determine that he understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). The district judge here covered the appellate waiver, but did not

personally inform the defendant of the collateral-attack waiver. This was a Rule 11 error. Coleman did not object at the time, and so under plain-error review, he cannot undo his conviction unless he shows the error affected his substantial rights. *United States v. Polak*, 573 F.3d 428, 431 (7th Cir. 2009). This means he must establish "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

Compliance with Rule 11 is not meant to exalt ceremony over substance. *United States v. Davila*, — U.S. —, 133 S.Ct. 2139, 2147 (2013) (quoting Advisory Committee's 1983 Note 749). In this context, the defendant's burden stems from the "particular importance of the finality of guilty pleas" and so "should not be too easy." *Dominguez Benitez*, 542 U.S. at 82. If the record reveals an adequate substitute for the missing Rule 11 safeguard, and the defendant fails to show why the omission made a difference to him, his substantial rights were not affected. *See United States v. Sura*, 511 F.3d 654, 662 (7th Cir. 2009). We look at the entire record to assess the probability that Coleman would have exercised his right to trial but for the trial court's failure to personally address the collateral-attack waiver. *See Davila*, 133 S.Ct. at 2150; *United States v. Vonn*, 535 U.S. 55, 74–75 (2002); *United States v. Williams*, 559 F.3d 607, 613 (7th Cir. 2009).

Coleman has not met his burden. The written plea agreement and his admissions that his lawyer explained the agreement to him and he understood the agreement—presumed to be true, *see United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008)—are adequate substitutes for the verbal in-court colloquy about the collateral-attack waiver. The dis-

trict court noted a concern that Coleman was semi-illiterate, but the record as a whole reveals that Coleman corresponded in writing with his lawyer, said he could read and write, and had the agreement read to him verbatim by his lawyer. The language of the collateral-attack waiver, although containing some cumbersome phrases apparently meant to ensure that Coleman was making a personal choice to waive his rights, was not incapable of being explained to Coleman by his counsel. The district court mentioned that the plea agreement had "some pretty complicated wording" and made sure that Coleman understood it and had no questions about it. This understanding about the entire agreement necessarily included the collateral-attack waiver.

But the waiver in Coleman's agreement had a problem. It excluded from its scope only those claims directly related to the negotiation of the waiver itself. This was too narrow. As we explained in *Hurlow v. United States*, 726 F.3d 958, 965–66 (7th Cir. 2013), waivers of collateral-attack rights are not enforceable against claims of ineffective assistance of counsel with regard to the plea agreement as a whole. The government concedes that the language in the agreement was not accurate, and promises that it will not attempt to enforce the collateral-attack waiver against ineffective assistance of counsel claims. This concession corrects any risk that the waiver will be enforced impermissibly, and provides Coleman with the precise admonition that a properly-conducted Rule 11 colloquy would have provided.

Finally, there is no reasonable probability that Coleman would have gone to trial had he been advised by the judge about the proper scope of his waiver. Coleman was facing a mandatory life sentence and he came to his senses not be-

cause of a poorly phrased collateral-attack waiver, but because his co-defendants (including fellow runners) were convicted at trial. At oral argument, his counsel acknowledged that the evidence against Coleman was strong (and we note the evidence is even stronger now that Coleman has testified at a sentencing hearing and admitted to conspiring to distribute crack), but argued that Coleman still would prefer to roll the dice on an outright acquittal. Counsel also argued that Coleman's persistence in pursuing this claim on appeal reflects the sincerity of his belief. These arguments do not provide a basis to conclude that it was the waiver that tipped Coleman's cost-benefit analysis from trial to guilty plea. Moreover, Coleman's arguments on appeal are insufficient to meet his burden. "Having submitted not so much as his own affidavit averring that he did not adequately comprehend the nature of his [collateral-attack rights] and that he would not have waived the right had he properly understood it, [Coleman] has failed to produce any evidence which would demonstrate that his substantial rights were affected." *Williams*, 559 F.3d at 613. Coleman has been found to intentionally interfere with proceedings when he thinks it to his advantage. On this record, it would take more than his word that he wants a trial to persuade us that an omission in his Rule 11 colloquy affected his substantial rights.

### III

Coleman was sentenced in May 2014. Since then, "several decisions of this court have clarified the analysis required to decide what conditions [of supervised release] to impose in what circumstances." *United States v. Harper*, —F.3d —, 2015 WL 6839542, at *3 (7th Cir. Nov. 6, 2015). Before imposing a term of supervised release, the sentencing court should give

advance notice of the conditions being considered, and when imposing the conditions, the court must justify the conditions by an adequate statement of reasons reasonably related to the § 3553(a) factors. *Kappes*, 782 F.3d at 842–45. These procedural safeguards were omitted from Coleman's sentencing, and, as a substantive matter, certain conditions imposed on Coleman were impermissibly vague (e.g., "the defendant shall not associate with any persons engaged in criminal activity"). *See id*. at 849 (citing *United States v. Thompson*, 777 F.3d 368, 376–77 (7th Cir. 2015)).

The government concedes the error and also waives any reliance on Coleman's appellate waiver to avoid a remand. Coleman requests a remand for full resentencing. We have described prison and supervised release as substitutes as well as complements, and therefore, it makes sense to remand for a full resentencing to allow the district judge to reexamine the entire sentence. *United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015) ("When a sentence consists of more than one form of punishment, such as prison, a fine, restitution, and supervised release, and one of the forms is as in this case altered by the appellate court, it cannot be assumed that the others should be unaffected.").

## IV

For these reasons, we AFFIRM the judgment of conviction, but VACATE the sentence and REMAND for resentencing.