In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2400

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VERNADO MALONE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:13-CR-104 — **Jon E. DeGuilio**, *Judge.*

ARGUED FEBRUARY 18, 2016 — DECIDED MARCH 9, 2016

Before WOOD, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. Appellant Vernado Malone pled guilty to mail fraud and aggravated identity theft pursuant to a written plea agreement. In the factual basis of his plea agreement, he admitted that he "committed numerous instances of access device fraud" and "misused the means of identification of employees of several companies," specifically identifying three companies and one individual he de-

frauded. At sentencing, the government presented evidence that there were twenty-eight victims of Malone's scheme.

Despite having waived his right to appeal, Malone argues that the government materially breached the plea agreement by presenting evidence of twenty-eight victims when only four were referred to by name in the agreement. Because the plea agreement made clear that the named victims were either an "example" or just "[o]ne of" the companies he defrauded, the government did not commit a material breach by introducing evidence that there were more victims than those specifically named. Accordingly, we enforce the appellate waiver and dismiss this appeal.

## I. BACKGROUND

On September 11, 2013, a grand jury indicted Malone on three counts—mail fraud, wire fraud, and aggravated identity theft—stemming from his multi-year scheme to fraudulently obtain and use credit cards.

### A. Plea Agreement

Malone entered into a written plea agreement in which he agreed to plead guilty to counts one and three of the indictment for mail fraud, 18 U.S.C. § 1341, and aggravated identity theft, § 1028A. The factual basis for his guilty plea provided the following:

> I have been convicted of fraud before, including in federal court. In this instance, I committed numerous instances of access device fraud and used the mails to do so. In 2011, for example, I pretended to be an employee with Modineer Co. and changed the Company's Citgo credit card account to an online account that I could control. Once I did that, I

ordered 14 fleet credit cards and had them mailed to locations in the South Bend, Indiana area where I could receive them. Some of these locations were abandoned houses. Then, without proper authorization, I used these credit cards to buy gift cards, gasoline, and other merchandise for myself and persons that I knew. I also defrauded Wright Express Fleet Services (WEX) in 2012. During this time, I misused the means of identification of employees of several companies that had credit card accounts with WEX. One of these companies was J&C Ambulance Service Inc. I misused the means of identification of Rick Reed at J&C Ambulance Service Inc. and with intent to defraud I ordered on March 15, 2013[1] ordered [sic] several credit cards be sent to 419 S. 26th Street, South Bend, Indiana via Federal Express (FED EX tracking no. 527759742018). I received these cards and began using them fraudulently on March 17, 2012. I did the same type of thing with WEX and a company called Rural Metro. In this instance, on March 28, 2012, I fraudulently ordered credit cards and they were sent at my request to 419 S. 26th Street, South Bend, Indiana via FED EX (FedEx tracking number 528981371819). On March 30, 2013, I started using the cards fraudulently[.]

With respect to sentencing, the plea agreement provided that the district court would "determine the applicable sentencing guideline range" and "determine all matters, whether factual or legal, relevant to the application of the sentencing guidelines including, but not limited to, … victim-related

---

[1] Although the factual basis in the plea agreement says 2013, it is clear from the record that these events occurred in 2012.

adjustments" after considering input "from the government." Malone expressly waived his right to appeal his conviction or "all components of [his] sentence, or the manner in which … [his] sentence was determined or imposed, to any Court on any ground."

In exchange for his guilty plea, the government agreed to dismiss the wire-fraud count and recommend either a 2 or 3-level reduction for acceptance of responsibility, depending on Malone's applicable offense level and the timeliness of his guilty plea. The government stipulated that the amount of the loss was $120,000, but the agreement contained no other stipulations.

On August 13, 2014, the district court held a change of plea hearing. Malone entered a plea of guilty on counts one and three of the indictment. After reviewing the plea agreement, the district court accepted it and found that it was made knowingly and voluntarily.

*B. Sentencing*

The presentence investigation report (PSR) recommended a 2-level enhancement for an offense involving more than ten victims. U.S.S.G. § 2B1.1(b)(2)(A)(i). The basis for the enhancement, the PSR explained, was because "Modineer and WEX sustained actual loss" yet "10 additional corporations/companies who were customers of WEX are also considered victims as they were initially charged and incurred liability for the charges, although the credit card company ultimately absorbed the losses." Malone objected, arguing that only Modineer and WEX, the companies that suffered unreimbursed financial losses, should count as victims.

At the sentencing hearing, the government called St. Joseph County Police Officer Philip Williams. Williams testified that WEX reported that twenty-eight of its clients "were subject to fraudulent charges on their credit accounts as a result of the Malone fraud." The government sought to admit affidavits from ten of those clients, but Malone objected, contending that "in our plea agreement we agreed on the number of victims." Explaining further, Malone pointed to the plea agreement's factual basis, describing it as a stipulation and arguing that because the section only refers to WEX, J&C Ambulance, and Rural Metro, "those are the only people that [he] was acknowledging that were victims in this case."

The district court disagreed that the factual basis in the plea agreement was a stipulation that there were only three victims of mail fraud. It held, however, that the additional twenty-eight companies did not qualify as "victims" for purposes of the victim-related enhancement because they did not sustain "actual loss." Instead, the district court took Officer Williams's testimony into account when considering the sentencing factors under 18 U.S.C. § 3553(a).

The district court determined that Malone had a total adjusted offense level of 15 and a criminal history category of IV, resulting in a guideline range of 30 to 37 months' imprisonment. The district court granted Malone a 4-level downward variance for cooperation with the government in other matters. But, the district court imposed a 4-level upward variance due to several aggravating factors, specifically noting "that while not characterized as victims for purposes of the guidelines, you defrauded 28 credit card cardholders over a three-year period." Ultimately, the district court imposed 37

months for mail fraud and 24 consecutive months for aggravated identity theft as required by 18 U.S.C. § 1028A—for a total of 61 months' imprisonment—followed by 2 years of supervised release.

## II. ANALYSIS

Despite having waived his right to appeal, Malone brings this appeal on the ground that the government materially breached the plea agreement. Specifically, he contends that it was a material breach for the government to argue at sentencing that there were twenty-eight victims when the plea agreement only mentioned three victims of mail fraud and one victim of aggravated identity theft.

The government, however, did not breach the plea agreement, and therefore, we enforce the appellate waiver.

The government argues that this appeal must be dismissed because of the appellate waiver, notwithstanding Malone's claim of a material breach. Of course, "a voluntary and knowing waiver of an appeal is valid and must be enforced," *United States v. Sakellarion*, 649 F.3d 634, 638 (7th Cir. 2011) (quotation marks omitted), "[u]nless a prosecutor's transgression is so serious that it entitles the defendant to cancel the whole plea agreement." *United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002).

Because a defendant may void a plea agreement where there is a material breach by the government, Malone's otherwise-valid appellate waiver does not preclude our review of his claim of material breach. *Sakellarion*, 649 F.3d at 639.

Where, as here, there is no factual dispute, we review whether there was a breach of a plea agreement *de novo*. *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). We

interpret a plea agreement using ordinary principles of contract law, "though with an eye to the special public-interest concerns that arise in this context." *Id.* (quotation marks omitted). Accordingly, when the language in a plea agreement is ambiguous, we look to "the parties' reasonable expectations and construe ambiguities against the government as the drafter." *Id.* But, "*we will not ignore the plain language* of the contract where there is no ambiguity." *United States v. Matchopatow*, 259 F.3d 847, 852 (7th Cir. 2001). Therefore, we give unambiguous terms in the plea agreement their plain meaning. *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011).

Malone's contention that the government stipulated to three victims of wire fraud and one victim of aggravated identity theft cannot be squared with the unambiguous terms of the plea agreement. Nothing in the factual basis indicates an agreement as to the number of the victims or purports to limit the government's ability to present evidence of other of victims for the purposes of sentencing. *See id.* at 217–18. Instead, it describes "numerous instances of access device fraud," one *example* of which was defrauding Modineer. The factual basis also states that Malone "misused the means of identification of employees of *several* companies … . *One* of these companies was J&C Ambulance Service." (emphasis added).

The plain language of the agreement does not limit itself to four victims. The fact that only four victims are referred to by name does not transform the factual basis into a stipulation as to the number of victims. Instead, those victims are explicitly included as just "[o]ne of" or an "example" of the type of victim of his crimes.

The absence of express language of stipulation as to the number of victims is telling in light of the fact that there *is* express language of stipulation in other parts of the plea agreement. The government and the defendant "stipulate[d] that the amount of the loss in this matter is $120,000," and the government "agree[d]" to recommend a 2-level reduction for acceptance of responsibility and to dismiss count two. That language stands in stark contrast to the factual basis of the plea agreement, which contained no language of stipulation or agreement. *See United States v. Schilling*, 142 F.3d 388, 397–98 (7th Cir. 1998) (contrasting the defendant's admissions in the factual basis with sections where the government "agree[d]" to make certain sentencing recommendations). Instead, given the "one-sided nature of the acknowledgment of criminal conduct" and the district court's duty to determine, among other things, any victim-related adjustments after input from the government, it is clear that the factual basis in the plea is not a stipulation to the number of victims. *See O'Doherty*, 643 F.3d at 217–18 (finding that factual basis where the defendant "acknowledge[d]" that the government could prove tax losses of $425,766 did not prevent the government from arguing at sentencing that there was a greater loss).

Finally, we note that at the sentencing hearing Malone objected to the introduction of testimony about other victims, stating:

> [W]e had an agreement in the full paragraph that listed a number of possible victims, and Mr. Malone said, 'No, I don't know who these people are,' so we ended up with this paragraph which refers to WEX and J&C Ambulance and Rural Metro,

> and those are the only people that Mr. Malone was acknowledging that were victims in this case.

But, the plea agreement contained an integration clause, which stated that "[o]ther than what is *contained in this plea agreement*, no predictions, promises, or representations have been made to me as to the specific sentence that will be imposed or any other matter." (emphasis added). Thus, any extrinsic evidence that could support Malone's contention that the parties agreed to limit the number of victims cannot overcome the express, unambiguous terms of the agreement. *Cf. United States v. Logan*, 244 F.3d 553, 557–58 (7th Cir. 2001) (finding that written plea agreement was complete despite the defendant's assertion that prosecutor had promised not to prosecute his family).

Because the factual basis of the plea agreement only listed a victim by name to serve as an "example" of Malone's "numerous instances of access device fraud" and there was no language of stipulation purporting to limit the number of victims, the government did not breach the plea agreement by presenting evidence at sentencing that there were twenty-eight victims of Malone's scheme.

## III. CONCLUSION

Because there was no breach of the plea agreement, which would invalidate the plea agreement and release Malone from his appellate waiver, this appeal is DISMISSED.