In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3378

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAMEION WYATT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cr-00085-JPS-1 — **J.P. Stadtmueller**, *Judge.*

ARGUED NOVEMBER 17, 2020 — DECIDED DECEMBER 14, 2020

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Appellant Dameion Wyatt pleaded guilty to conspiring to traffic a minor. In exchange, the government promised to join him in recommending a below-guideline sentence of ten years in prison and to advise the court about his post-plea cooperation. The government upheld only part of its bargain. It did recommend a ten-year sentence. Yet it was Wyatt's lawyer, not prosecutors, who told

the court about his cooperation. Wyatt did not object at the time, and he received the jointly recommended sentence. He has appealed, nevertheless, arguing that the government's silence about his cooperation breached the plea agreement, constitutes plain error, and warrants resentencing by a different judge. We affirm Wyatt's sentence. We agree with Wyatt that the government's silence breached the plea agreement, but under these circumstances, in which the judge accepted the parties' joint recommendation of a sentence well below the guideline range, Wyatt has not shown a reasonable probability that the breach had any effect on his sentence. This was not a plain error calling for any remedy.

I.  *Factual and Procedural Background*

Wyatt sexually trafficked at least four women and conspired to traffic one minor in Wisconsin and nearby states. A grand jury indicted him on ten counts of trafficking. Wyatt and the government agreed that Wyatt would plead guilty to just one count, for conspiring to traffic a minor in violation of 18 U.S.C. § 1594(c). The written plea agreement provided that the parties would jointly recommend a prison sentence of 120 months (ten years), which was less than half the low end of the Sentencing Guideline range later calculated by the court.

In Paragraph 33 of the agreement, Wyatt promised to "fully and completely cooperate" with the government in related investigations. The government, in turn, agreed "to advise the sentencing judge of the nature and extent of the defendant's cooperation." The government left open the possibility that, if Wyatt's cooperation were substantial, it might "in its discretion" seek a downward departure.

Before sentencing, it was not the government but Wyatt's counsel who filed a sealed document outlining Wyatt's cooperation since entering his plea. (Because the document remains sealed, we do not canvass the details here.) The document did not discuss any obligation that the government endorse it, and the government filed no response.

At the sentencing hearing, the court adopted the guideline calculations in the Presentence Investigation Report, yielding an imprisonment range of 262 to 327 months. Wyatt contested some elements of the guideline calculation, but the court declined to resolve them, characterizing the disputes as "academic" because even the lower ranges advocated by Wyatt lay well above the jointly recommended ten years.

Then, in support of the ten-year recommendation, Wyatt's lawyer stressed that he had turned away from crime, immersed himself in religion, and started a real estate and rental business catering to underserved communities. Wyatt then spoke on his own behalf. Despite the plea agreement, he asked for a three-year sentence. Not surprisingly, this led the government to ask whether Wyatt actually wished to stick with his plea agreement. After a short recess, Wyatt's lawyer reiterated that he wished to stand by the plea and the joint recommendation of ten years. The prosecutor concurred, expressly weighing Wyatt's moral turnaround against his long criminal history, the violence of his crimes, and his victimization of the trafficked women. The prosecutor never mentioned Wyatt's cooperation.

The court accepted the joint recommendation as "eminently fair" and "reasonable." In explaining its decision, the court did not mention cooperation. The court sentenced Wyatt to ten years in prison and three years of supervised release.

II. *Analysis*

On appeal, Wyatt argues that the prosecutor's silence about his cooperation breached the plea agreement and requires resentencing before a new judge. Although the jointly recommended sentence was far below the guideline range, although the agreement barred him from seeking a lower term, and although the government did not seek a substantial-assistance departure, Wyatt suggests that if the government had submitted or ratified the details of his sealed filing, the judge might have chosen on his own initiative to go below the recommended sentence.

In the absence of factual disputes, we review de novo whether a plea agreement has been breached. See *United States v. Navarro*, 817 F.3d 494, 499 (7th Cir. 2016). A government's breach of a promise about its sentencing recommendation is serious. The *minimum* remedy is ordinarily to vacate the sentence and to order resentencing before a different judge. See *Santobello v. New York*, 404 U.S. 257, 263 (1971); *United States v. Diaz-Jimenez*, 622 F.3d 692, 696–97 (7th Cir. 2010). In this case, however, Wyatt did not alert the district court to any problem. The parties and we therefore agree that his claim may be reviewed only for plain error. See *Navarro*, 817 F.3d at 499. To prevail, Wyatt must show not only that there was (1) a breach that (2) was clear and obvious , but also that it (3) affected his substantial rights and (4) seriously disturbed the fairness, integrity, and reputation of the judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (applying four-step plain-error review to government's breach of promise to recommend three-level guideline reduction for acceptance of responsibility).

We agree with Wyatt that the prosecutor's silence about his cooperation was an error, and an obvious one, satisfying the first two steps of the plain-error test. When a guilty plea depends "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262. Prosecutors, who have the benefit of drafting plea agreements to their own satisfaction, must adhere to their promises. E.g., *Diaz-Jimenez*, 622 F.3d at 696–97 (finding breach where prosecutor broke explicit promise for sentence recommendation). The government here promised to tell the court about Wyatt's cooperation. If the district court had been more skeptical about a sentencing recommendation so far below the guideline range, information about cooperation could have proved critical in persuading the judge that the recommendation was reasonable. The government offers no excuse for its failure to provide that information when the time came, especially after reaping the benefits of Wyatt's assistance, and we can see no excuse in this record.

The government does try, however, to characterize this breach as "technical" because Wyatt submitted on his own behalf a sealed document outlining the extent of his cooperation. We reject this effort to minimize the breach. The government's argument is not consistent with the adversarial roles of government and defense. Every judge and lawyer in the federal criminal justice system knows that arguments and evidence in mitigation carry much greater weight when they come from the government instead of the defense. This truism carries extra force when it comes to assessments of cooperation, where the government is better informed and less likely than the defense to exaggerate the value. That's why a promise from the government to present such mitigating information

is so important. See, e.g., U.S.S.G. §§ 3E1.1 & 5K1.1 (third level of credit for acceptance of responsibility and downward departure for substantial assistance available only upon government motion). That's also why the presumptive remedy is reversal and resentencing before a new judge.

Even so, a plain error warrants reversal on a forfeited claim only if it affects a defendant's substantial rights, the third step of the plain-error test. To make that showing, Wyatt would need to establish a reasonable likelihood that he would have received a lower sentence if prosecutors had spoken up about his cooperation. See *Puckett*, 556 U.S. at 134–35, 141–42 (on plain-error review, government's breach of promise to recommend credit for acceptance of responsibility did not require reversal; defendant's intervening commission of new crime made credit unavailable as practical matter); *United States v. Anderson*, 604 F.3d 997, 1002–03 (7th Cir. 2010) (on plain-error review, government's breach of promise to move for third level of credit for acceptance of responsibility did not require reversal; defendant had gone to trial, making third level unavailable, and judge made clear his intention to impose statutory maximum sentence regardless of other details).

Wyatt contends that he might have received a lighter sentence. He points out that the court accepted the recommended ten-year sentence even without expressly considering his cooperation. It stands to reason, he says, that if the court had not been deprived of this mitigating information, it might have found an even shorter sentence reasonable.

We view that as a highly improbable scenario. The ten-year sentence was substantially below the applicable guideline range. The court would not have accepted the joint ten-year recommendation without taking Wyatt's cooperation

into account. The information about that cooperation was presented to the court, albeit under seal. We attribute no significance to the judge's silence about it in the sentencing hearing. Cooperation is often not discussed in open court because of the risk of retaliation by other criminals. The remote possibility of a sentence even lighter than the parties' agreed recommendation cannot satisfy the "remarkably demanding" test for plain error in this situation. *Anderson*, 604 F.3d at 1002–03. The court imposed the precise sentence Wyatt asked for. See *Puckett*, 556 U.S. at 141–42 (noting prejudice from breach is unlikely if defendant obtains benefit contemplated by "the deal," such as "the sentence that the prosecutors promised to request"). The district court's characterization of any guideline disputes as "academic" in light of that joint recommendation signaled clearly that additional mitigating information would not have affected the ultimate decision. Add to that the government's decision not to seek a substantial-assistance departure and the parties' continued adherence to a ten-year recommendation. We cannot conclude that Wyatt's substantial rights were impaired.

Finally, Wyatt's request for relief also fails to satisfy the fourth and discretionary step of the plain-error test: the likely effect on the fairness, integrity, and public reputation of the judicial proceedings. *Puckett*, 556 U.S. at 135, 142. Consider what would happen on remand if we agreed with Wyatt. The government would again recommend ten years; the agreement would bar Wyatt from arguing for anything less; and the government's new statement of cooperation would remain unaccompanied by a substantial-assistance motion. We can only imagine the puzzled looks among the judge and lawyers. All Wyatt could do is hope for a sua sponte decision to sentence him to less than the jointly recommended term

already so far beneath the guideline range. Fairness, integrity, and the public reputation of the courts do not require that exercise. A remand for resentencing before a different judge is the ordinary remedy for a breach like this one, if an objection is raised, but the circumstances of this case do not call for that remedy under the plain-error standard.

The judgment of the district court is AFFIRMED.