In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2820

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NICHOLAS KARAGIANIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cr-378 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED APRIL 8, 2025 — DECIDED JULY 11, 2025

Before HAMILITON, LEE, and MALDONADO, *Circuit Judges.*

LEE, *Circuit Judge.* Nicholas Karagianis was indicted on
federal drug and firearm charges. He later entered into a plea
agreement and pleaded guilty to all counts. As part of the
agreement, he and the government stipulated that, under the
United States Sentencing Guidelines, the final offense level for
all counts was 31. The plea agreement also contained a provi-
sion that waived Karagianis's ability to appeal an adverse

ruling on any motion he might file to modify his sentence under 18 U.S.C. § 3582(c)(2).

In anticipation of sentencing, the probation department prepared a presentence report (PSR). Rather than agreeing that the total offense level was 31, however, the PSR recommended a final offense level of 33 based on an additional two-level firearm enhancement not in the plea agreement. At a combined change-of-plea and sentencing hearing, the district court adopted the PSR's recommendation, found the final offense level to be 33, and imposed a below-guideline sentence. A short time later, Karagianis sent a letter to the court, stating he was misled by his counsel about how his sentence would be calculated if he pleaded guilty.

Karagianis raises three arguments on appeal. First, he contends that he entered his guilty plea unknowingly because the district court had failed to inform him about the waiver of his right to appeal an adverse ruling of a § 3582(c)(2) motion. He also faults the court for not explaining the impact the PSR would have on sentencing. Additionally, Karagianis argues that the government breached the plea agreement by failing to object to the PSR's proposed final offense level of 33. For the reasons explained below, we affirm the judgment.

## I

Karagianis was indicted on two counts of distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Counts 1 and 2) and one count of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). According to the indictment, Karagianis distributed drugs on two separate occasions in late 2021. And law enforcement officers would later search his home to find

a handgun in his bedroom nightstand as well as 38 grams of fentanyl on his person. What follows are the relevant portions of Karagianis's plea agreement, the PSR, the district court hearing, and his post-sentencing letter.

**A**

In February 2023, the parties filed a joint petition to enter a plea of guilty, attaching the plea agreement. As part of the agreement, Karagianis and the government stipulated that Counts 1 and 2 would result in a total offense level of 34 (a base offense level of 32 plus two additional levels under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance). Count 3, the parties agreed, would result in a total offense level of 18 (a base offense level of 14 plus four additional levels under U.S.S.G. § 2K2.1(b)(6)(B) because Karagianis had used or possessed a firearm in connection with the distribution of controlled substances). After applying the Sentencing Guidelines' grouping rules and deducting three levels for Karagianis's acceptance of responsibility and guilty plea, the final offense level was 31.

The agreement, however, noted two important caveats. First, it confirmed that the parties "underst[ood] and agree[d] that these [s]tipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guideline applicable in this case." Second, the parties acknowledged that they did "**not** agree[] upon a specific sentence" (emphasis in original) and reserved the right to argue for a sentence they believed was appropriate.

In addition, Karagianis agreed to waive his right to appeal, including his right to directly appeal his conviction and sentence and his right to collateral review. Relevant here, Karagianis agreed "not to contest, or seek to modify, [his] conviction or sentence or the manner in which either was determined in any legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582." Notwithstanding this waiver, the government agreed that it would allow Karagianis to file a motion under § 3582(c)(2) if the United States Sentencing Commission or Congress amended the Sentencing Guidelines to lower the guideline range applicable to Karagianis's offenses retroactively.[1] But there was an exception to this exception: "should [Karagianis] seek to appeal an adverse ruling of the district court on such a motion," the parties agreed, "th[e] waiver bars such an appeal."

Finally, Karagianis acknowledged in the plea agreement that he had "read the entire Plea Agreement and discussed it with [his] attorney," and that he "underst[ood] all the terms of the Plea Agreement and those terms correctly reflect[ed]

---

[1] Section 3582(c)(2) provides:

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

the results of plea negotiations." The agreement was signed by Karagianis, his attorney, and the prosecutors.

In anticipation of sentencing, the probation department prepared Karagianis's PSR. It mirrored the parties' stipulated guideline calculation in all but one respect—the probation department recommended an additional two offense levels under U.S.S.G. § 2D1.1(b)(1) on the grounds that Karagianis had possessed a dangerous weapon in connection with a drug trafficking offense. With this added enhancement, the final offense level was 33 rather than 31.[2]

In response to the PSR, the defense submitted an objection related to the scoring of a past conviction. The government filed no objection to the PSR.

**B**

On June 7, 2023, the district court conducted a combined change-of-plea and sentencing hearing. Karagianis stated under oath that he was 38 years old, attended a year of college, and was not receiving mental health treatment or under the influence of any substance. The court asked Karagianis whether he had read the plea agreement and discussed it with his lawyer. The court also probed whether Karagianis understood the terms and conditions in the agreement. Karagianis responded affirmatively to both questions.

---

[2] Probation applied the enhancement following our decision in *United States v. Tinsley*, 62 F.4th 376, 390 (7th Cir. 2023) (concluding that counting guns that formed the basis for certain firearm convictions to also enhance a sentence for felon-in-possession convictions did not amount to improper double counting). *Tinsley* was issued after the filing of the plea agreement but before the preparation of the PSR in this case.

After describing the consequences of entering a guilty plea, the court returned to the plea agreement and explained that the court was not bound by it, "so the ultimate determination of [Karagianis's] sentence [was] left to [its] discretion." Karagianis affirmed that he understood. The court then reviewed the elements of the charged offenses before reiterating that "[b]ecause this [was] a nonbinding plea agreement, [the court was] going to use [its] discretion to fashion a sentence within the statutory ranges."

The court proceeded to confirm that Karagianis had discussed the statutory sentencing factors with his counsel and noted that it would consider those factors when determining the appropriate sentence. The court also discussed the Sentencing Guidelines, emphasizing that "those sentencing guidelines are not mandatory or binding on [it]" but "advisory in nature." The court specifically told Karagianis that, even "if [it] determine[d] a different advisory sentencing guideline range than what [was] in this plea agreement," Karagianis would still be bound by his guilty plea. And the court reminded Karagianis that the parties' guideline stipulations "are only a recommendation to the [c]ourt." Karagianis again affirmed his understanding of each of the court's statements.

Turning to the appeal waiver, the court advised Karagianis that he had expressly agreed not to contest his conviction or sentence on direct appeal or in any postconviction proceedings. At this point, Karagianis's counsel asked for a brief recess, and the court paused the hearing so that the two could talk privately.

After the break, the court reiterated that Karagianis was waiving his right to appeal as well as to pursue postconviction proceedings with "some exceptions." One exception, noted

the court, allowed Karagianis to file a motion under 18 U.S.C. § 3582(c)(2) to modify his sentence in the event of an applicable retroactive Guideline amendment. The court, however, did not recount that the plea agreement barred Karagianis from appealing an adverse ruling on such a motion.

Satisfied that Karagianis was entering the plea knowingly and voluntarily, the court accepted his plea of guilty to all three counts and continued to the sentencing portion of the hearing. The court first asked the government whether it had any objections or corrections to the PSR. The prosecutor replied, "No, Your Honor." The court then confirmed that Karagianis had reviewed the PSR with his counsel.

After ruling on an objection not relevant to this appeal, the court adopted the recommendations in the PSR and calculated a total offense level of 33. Combining this with Karagianis's criminal history category of V, the court arrived at an overall guideline range of 210 to 262 months of imprisonment for each of Counts 1 and 2, and 120 months of imprisonment for Count 3.

For its part, the government requested a below-guideline sentence of between 188 and 200 months of imprisonment to avoid disparities with other similarly situated defendants. Defense counsel did not request a specific sentence but asked that Karagianis be placed in a drug treatment program while in custody. Finally, after considering the sentencing factors in 18 U.S.C. § 3553(a), the court imposed a term of imprisonment of 168 months for each of Counts 1 and 2, and 120 months for Count 3, all to be served concurrently.

## C

Nine days after his sentencing, Karagianis wrote a letter to the court claiming that he had signed his guilty plea based on incorrect information from his counsel. In Karagianis's own words, he was told, "there were no more mandatory minimums, that the AUSA was binded [sic] by my plea that was offense level 31 criminal history category 4 which the low end would've been 12yr 7mo, that I could modify & that we would ask for the safety valve." Defense counsel also purportedly told him that there was no basis to challenge the various sentencing enhancements. According to Karagianis, "[he] found out at the end of sentencing everything [he] was told was not true," and, had he known otherwise, he would not have entered into the plea agreement. We construed Karagianis's letter as a notice of appeal and appointed him counsel.

## II

Karagianis seeks to undo his guilty plea in two ways. First, he contends that the district court violated Federal Rule of Criminal Procedure 11 by omitting certain items during the plea colloquy. Second, he argues that the government breached the plea agreement by not objecting to the PSR's recommended final offense level.

As an initial matter, we note that Karagianis failed to raise these arguments below, and so we review his challenges for plain error. *See United States v. Navarro*, 817 F.3d 494, 499 (7th Cir. 2015) (applying plain error review to breach-of-plea-agreement argument); *United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2007) (applying plain error review to Rule 11 claim). Under plain error review, a defendant "will prevail if he can demonstrate that: (1) there was an error; (2) the error is clear

or obvious, rather than subject to reasonable dispute; (3) the error affected [the defendant's] substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Navarro*, 817 F.3d at 499 (citations omitted). Throughout this process, Karagianis bears the burden of proof. *See Sura*, 511 F.3d at 659 (citing *United States v. Vonn*, 535 U.S. 55, 82 (2002)).

## A

Karagianis first argues that he did not knowingly enter his plea because the district court had not informed him about (1) the waiver of his ability to appeal any denial of a sentence-reduction motion under § 3582(c)(2), and (2) the significant role the PSR played in the calculation of his guideline range. These omissions, he claims, violated Federal Rule of Criminal Procedure 11.

Rule 11, a "guilty-plea safeguard[]," *United States v. Ruiz*, 536 U.S. 622, 631 (2002), articulates "the procedures that a district court must follow when a defendant wishes to plead guilty," *Sura*, 511 F.3d at 657. The rule requires the judge to "address the defendant personally in open court." Fed. R. Crim. P. 11(b)(1). "During this colloquy, the court must convey specific information about his rights and the consequences of his plea, and it must satisfy itself that he understands those rights." *United States v. Olson*, 880 F.3d 873, 876 (7th Cir. 2018) (citing Fed. R. Crim. P. 11(b)(1)). The purpose of a Rule 11 colloquy is to ensure "that a defendant's guilty plea is truly voluntary," so "the more meticulously the Rule is adhered to, the more it tends to discourage … the numerous and often frivolous … attacks on the constitutional validity of guilty pleas." *McCarthy v. United States*, 394 U.S. 459, 465 (1969), *superseded on other grounds by* Fed. R. Crim. P. 11(h).

When a defendant seeks to invalidate a guilty plea, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded …. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Moreover, "[t]he validity of a Rule 11 colloquy is based on the totality of the circumstances." *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004). Such factors include "the complexity of the charge, the defendant's level of intelligence, age, and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *Id*. (internal quotation marks omitted).

**1**

As Karagianis sees it, the district court violated Rule 11(b)(1)(N) by not ensuring that he understood he was waiving his right to appeal the denial of a § 3582(c)(2) sentence-reduction motion. But this argument fails under plain error review.

Rule 11(b)(1)(N) provides that "the court must inform the defendant of, and determine that the defendant understands … the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Given the atypical nature of the waiver provisions in this case, compliance with Rule 11(b)(1)(N) required unusually close attention to the structure of the plea agreement. Karagianis's plea agreement did not contain a general waiver of all appellate and post-conviction rights. It set forth instead a detailed set of waivers and exceptions in six different paragraphs.

The second of those paragraphs contained a waiver of the right to pursue most forms of postconviction relief. However, the agreement explicitly exempted a number of items from that general postconviction-proceedings waiver, including a motion seeking a sentence-reduction under § 3582(c)(2). To its credit, the district court went over the § 3582(c)(2) exception with Karagianis, explaining that, despite waivers of other postconviction remedies, Karagianis retained the right to seek relief under § 3582(c)(2). But the court did not go over the oddly worded exception to the exception: "Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a [§ 3582(c)(2)] motion, this waiver bars such an appeal." This omission left the mistaken impression that Karagianis retained the right to pursue such a motion to the fullest extent, including appeal, particularly given the care the court took to explain the other appeal-waiver provisions in the agreement. Thus, under these circumstances, the district court's failure to inform Karagianis that he would waive any right to appeal a denial of a § 3582(c)(2) motion was erroneous.

The government suggests, however, that the court's error was not "clear or obvious," *Navarro*, 817 F.3d at 499, because the court generally informed Karagianis that he was agreeing not to contest his sentence or the manner in which it was determined in any postconviction proceedings. But this statement (and the provision in the plea agreement on which it was based) does not specifically mention appeals at all, much less appeals related to postconviction motions that Karagianis retained the right to file under the agreement. *Cf. United States v. Woods*, 581 F.3d 531, 533–34 (7th Cir. 2009) (materially identical waiver language did not bar appeal of denial of

§ 3582(c)(2) relief), *overruled on other grounds by United States v. Taylor*, 778 F.3d 667, 669 (7th Cir. 2015).

Indeed, the court informed Karagianis that he retained the right to file a postconviction claim under § 2255 asserting ineffective assistance of counsel, a motion for compassionate release under § 3582(c)(1)(A)(i), and a motion under § 3582(c)(2). The first two exceptions did not limit Karagianis's right to appeal in any fashion, but the third one did. Accordingly, the colloquy viewed in its entirety left the impression that Karagianis retained the right to pursue all three exceptions to the postconviction waiver to their fullest extent, including appeal. Given the peculiarity of these provisions, the court should have done more to ensure that Karagianis understood their nuances. *See Sura*, 511 F.3d at 662 (noting that the purpose of Rule 11's subparagraphs is to "ensure that the defendant *actually knows* what rights he is signing away") (emphasis added).

Nonetheless, Karagianis has not demonstrated that the district court's error affected his substantial rights. To make this showing, Karagianis must establish "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "If the record reveals an adequate substitute for the missing Rule 11 safeguard, and the defendant fails to show why the omission made a difference to him, his substantial rights were not affected." *United States v. Coleman*, 806 F.3d 941, 944–45 (7th Cir. 2015) (citing *Sura*, 511 F.3d at 662). "We look to the entire record to determine whether he made this showing[.]" *United States v. Goliday*, 41 F.4th 778, 786 (7th Cir. 2022) (citing *Dominguez Benitez*, 542 U.S. at 83). In particular, the right to appeal in question here is highly contingent. It could affect

Karagianis only if (a) the United States Sentencing Commission adopted in the future an amendment affecting Karagianis's situation, (b) the Commission then made the amendment retroactive, and (c) Karagianis then sought relief and lost in the district court.

Karagianis relies on our decision in *Sura*, in which we concluded that the defendant's substantial rights were affected by the district court's failure to mention a plea agreement's appellate waiver. *See Sura*, 511 F.3d at 662–63. But the facts in *Sura* are markedly different from the circumstances here. In *Sura*, the defendant was 71 years old, undergoing psychological treatment, and, puzzlingly, told the court that he was accepting the plea agreement because he had to plead guilty. *Id.* at 656, 662. There was nothing in the record beyond the facts that the defendant was "literate and signed the agreement" to indicate that he understood the plea agreement. *Id*. at 662. For example, the district court did not ask whether his attorney had explained the appellate waiver or whether the defendant had reviewed the agreement with his attorney. *Id*. Thus, we doubted, "in light of [his] confused responses to the district judge's questions, his age, and his mental condition," that the defendant would have entered the plea "had he realized that he was losing his chance to challenge the district court's sentencing decision." *Id.*

By contrast, Karagianis was 38 years old at the time of the plea, had completed a year of college, and displayed no signs that he did not understand the nature of the proceedings. Indeed, he expressly acknowledged at the hearing and within the plea agreement itself that he understood the agreement's terms. We have determined on similar facts that adequate "substitutes for a proper Rule 11 colloquy were in place,

which indicated that [the defendant] was aware" of a waiver omitted from a plea colloquy. *United States v. Polak*, 573 F.3d 428, 432 (7th Cir. 2009) (concluding that defendant "had adequate knowledge of the appellate waiver" in light of, among other things, his acknowledgement within the plea agreement of having reviewed it and the court's inquiry about whether he reviewed the agreement with his attorney); *see also Coleman*, 806 F.3d at 945 ("The written plea agreement and his admissions that his lawyer explained the agreement to him and he understood the agreement—presumed to be true—are adequate substitutes for the verbal in-court colloquy about the collateral-attack waiver.") (citation omitted).

Nor has Karagianis demonstrated that he would not have pleaded guilty had he been explicitly reminded by the court about the § 3582(c)(2)-appeal waiver. Karagianis said in his post-sentencing letter that he would not have pleaded guilty if he had not been misled by his attorney about certain matters, including that he "could modify." Presumably, he was referring to his ability to ask a court to modify his sentence. But the plea agreement did preserve his right to file a motion under § 3582(c)(2); it just made clear that he cannot appeal in the event that such a motion is denied. Moreover, Karagianis did not indicate in his letter, much less substantiate on appeal, that he would not have entered the plea had the district court reminded him of his agreement to waive a § 3582(c)(2) appeal.

But even if his substantial rights were affected, Karagianis has not established that the district court's omission was so serious as to impugn the fairness, integrity, or public reputation of the judicial proceedings. *See Navarro*, 817 F.3d at 499. We concluded in *Sura* that omitting from a Rule 11 colloquy any discussion of a defendant's waiver of appellate rights in

a plea agreement justified setting aside the defendant's plea. 511 F.3d at 663. But that case is readily distinguishable for the reasons explained. And there is no evidence that the § 3582(c)(2)-appeal waiver played an essential role in Karagianis's decision to plead guilty. On this record, holding Karagianis to his agreement would not undermine confidence in the integrity of the judicial process.[3]

**2**

Karagianis next contends that the district court violated Rule 11(b)(1)(M) by failing to ensure that he understood the relevance of the PSR as the starting point for the calculation of his guideline range. That rule provides that "the court must inform the defendant of, and determine that the defendant understands … in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(M). What the rule lacks is any mandate that the court explain the relevance of the PSR to its sentence determination. And Karagianis has cited no authority to the contrary.

Furthermore, Karagianis asserts that he would not have agreed to plead guilty had he known that the district court could apply the additional two-level firearm enhancement.

---

[3] Karagianis has not argued that a defendant's knowing and voluntary waiver of his right to appeal the denial of a motion under 18 U.S.C. § 3582(c)(2) is unenforceable as a matter of law, and we take no position on that issue, nor on whether, given the omission of the provision in the plea colloquy, the waiver would actually be enforceable if and when that question might arise.

But we find this hard to believe. After all, as Karagianis af-
firmed, he understood that the stipulations in the plea agree-
ment did not bind the court and reviewed the PSR with his
counsel well before entering his plea. Given these circum-
stances, Karagianis falls well short of establishing that the dis-
trict court's actions adversely impacted his substantive rights
or diminish the fairness, integrity, or public reputation of the
judicial proceedings.[4]

**B**

Lastly, Karagianis argues that the government breached
the plea agreement by failing to object to the PSR's recom-
mended total offense level of 33 despite its stipulation. To de-
termine whether a breach has occurred, "we apply ordinary
principles of contract law in interpreting the agreement, 'with
an eye to the special public-interest concerns that arise in this
context.'" *United States v. Orlando*, 823 F.3d 1126, 1134 (7th Cir.
2016) (quoting *United States v. Malone*, 815 F.3d 367, 370 (7th
Cir. 2016)). Thus, we will hold the parties to "the plain, unam-
biguous language" of the plea agreement, and only when am-
biguities exist will we examine "the parties' reasonable expec-
tations and construe ambiguities against the government as
the drafter." *Id.* (citing *Malone*, 815 F.3d at 370).

At the outset, we question whether the government
breached the plea agreement at all. True, the agreement states

---

[4] The cases Karagianis cites in support of his Rule 11(b)(1)(M) argu-
ment are distinguishable. *Goliday*, 41 F.4th at 784, involved a failure to en-
sure that the defendant had "real notice" of the charges against him. And,
in *Olson*, 880 F.3d at 879, the court did not conduct a plea colloquy for a
new guilty plea.

that the guideline stipulations are "binding on the parties," but it also states that they are only recommendations and not binding on the court. Furthermore, nothing in the plea agreement obligates the government to object to the PSR in the event it calculated the guidelines differently. And, unlike in *United States v. Cruz*, 95 F.4th 106, 111 (3d Cir. 2024), the government did not affirmatively advocate for an enhancement not contained in the plea agreement. Thus, any breach was not clear or obvious.[5]

But, even assuming the government had plainly breached the plea agreement, the breach did not impact Karagianis's

---

[5] Other appellate courts have reached different conclusions on similar facts, further illustrating that any breach here was not plain. *See, e.g.*, *United States v. Gall*, 829 F.3d 64, 73 (1st Cir. 2016) (finding no plain breach of plea agreement where prosecutor stated to court that calculations in PSR correctly reflected the facts in the case and did not seek enhancements beyond those set forth in plea agreement); *United States v. Ellis*, 641 F.3d 411, 417, 420 (9th Cir. 2011) (regardless of whether review is *de novo* or for plain error, rejecting claim that government breached plea agreement because it "made no argument that the district court should increase the offense level calculation set forth in the PSR and plea agreement"); *United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001) (applying *de novo* review and finding no breach where "plea agreement did not obligate the government to object to recommendations made in the presentence report" that conflicted with plea agreement). *But see United States v. Lovelace*, 565 F.3d 1080, 1087 (8th Cir. 2009) (concluding that government plainly breached plea agreement based on government telling district court that PSR calculation was "correct" despite disparity between plea agreement's base offense level of 20 and PSR's base offense level of 24); *Gunn v. Ignacio*, 263 F.3d 965, 970 (9th Cir. 2001) (granting habeas relief upon finding that government breached the plea agreement; "[f]or a prosecutor to tell a judge at sentencing that he concurs in a presentence report is an argument for sentencing in accord with the presentence report").

substantial rights. "To make that showing, [Karagianis] would need to establish a reasonable likelihood that he would have received a lower sentence if prosecutors had spoken up about [the parties' lower stipulated total offense level]." *United States v. Wyatt*, 982 F.3d 1028, 1031 (7th Cir. 2020).

Karagianis faces a particularly high hurdle here because the court imposed a sentence of 168 months of imprisonment, considerably below the calculated guideline range of 210 to 262 months. Moreover, applying the guideline stipulations in the plea agreement would have resulted in a guideline range of 168 to 210 months. *See* U.S.S.G. Ch. 5 Pt. A (U.S. Sent'g Comm'n 2021). Thus, the ultimate sentence was at the low end of the range that Karagianis advocates here.

Undeterred, Karagianis urges us to consider the possibility that the district court might have imposed an even lower sentence had it applied the guideline range in the manner the parties had agreed. But Karagianis knew that the court did not have to follow the stipulations. And nothing in the record indicates that the court would have ignored the two-level firearm enhancement recommended in the PSR or that, if it had, it would have imposed a more lenient sentence than it did. *Cf. Wyatt*, 982 F.3d at 1031 ("The remote possibility of a sentence even lighter than the parties' agreed recommendation cannot satisfy the 'remarkably demanding' test for plain error in this situation.") (quoting *United States v. Anderson*, 604 F.3d 997, 1002–03 (7th Cir. 2010)).

For the sake of completeness, we also note that nothing in the record indicates that the government's failure to object to the PSR was so serious as to impugn the fairness, integrity, or public reputation of the judicial proceedings. To be sure, "[a] government breach of a plea agreement can be a very serious

matter, particularly if it concerns the government's sentencing recommendation or position." *United States v. Collins*, 986 F.3d 1029, 1032 (7th Cir. 2021) (citing *Wyatt*, 982 F.3d at 1030). But, for the reasons explained, there is little reason to believe that Karagianis would have received an even lower sentence had the court adopted the parties' stipulated total offense level.

### III

For the foregoing reasons, we AFFIRM the judgment of the district court.