In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1704

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT M. TRIGGS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 16-cr-51-jdp-1 — **James D. Peterson**, *Chief Judge.*

ARGUED JANUARY 22, 2020 — DECIDED JULY 1, 2020

Before WOOD, *Chief Judge*, and SYKES and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Robert Triggs was indicted for unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(9), which prohibits firearm possession by persons convicted of a misdemeanor crime of domestic violence. The predicate conviction was more than ten years old, so Triggs mounted an as-applied Second Amendment challenge to the indictment. When that argument failed, he conditionally

pleaded guilty, reserving his right to appeal the Second Amendment ruling.

Soon after he filed his notice of appeal, the Supreme Court issued its decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), clarifying the elements of a § 922(g) violation. The Court held that in a § 922(g) prosecution, the government must prove that the defendant "knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200 (emphasis added). The second knowledge element is new; no one was aware of it when Triggs pleaded guilty. So in addition to his Second Amendment argument, Triggs raised a *Rehaif* claim and seeks to withdraw his plea.

The plain-error standard governs our review of the *Rehaif* issue. The government agrees that the error is plain. The disputed question is whether it was prejudicial, which in this context requires Triggs to establish a reasonable probability that he would not have pleaded guilty if he had known the government had to prove the *Rehaif* knowledge element. That, in turn, depends on whether Triggs can plausibly argue that he did not know he belonged to the relevant category of persons disqualified from firearm possession— more specifically, that he did not know his ten-year-old conviction was a "misdemeanor crime of domestic violence" as that phrase is defined for purposes of § 922(g)(9).

Triggs has made the required showing to withdraw his plea. In contrast to some of the other categories of prohibited persons listed in § 922(g)—notably, felons—the statutory definition of "misdemeanor crime of domestic violence" is quite complicated, giving Triggs a plausible defense. We

vacate and remand for further proceedings without reaching the constitutional question.

## I. Background

In November 2015 Triggs was summoned to his son's school in Tomah, Wisconsin, to discuss violent social-media threats his son and other students made against a teacher. Tomah police were investigating and wanted to account for any firearms that the students may have access to. Triggs acknowledged that he owned several hunting rifles and agreed to let the officers into his home to inspect them.

En route to the home, Officer Aaron Hintz checked Triggs's criminal record and discovered that he had a 2008 misdemeanor battery conviction that might disqualify him from possessing firearms because it appeared to involve domestic abuse. When the officers arrived at the home, Triggs directed them to his three hunting rifles hanging unsecured in a wooden gun rack in the living room. A loaded rifle magazine and additional ammunition sat on a shelf underneath the rack. Officer Hintz inquired about the 2008 battery conviction and asked Triggs if he had tried to purchase a gun since that time. Triggs said that he had tried and was denied but hadn't read the document notifying him of the denial. Officer Hintz confirmed that Triggs was prohibited from possessing firearms and confronted him with this information. Triggs claimed ignorance of the prohibition and voluntarily surrendered his guns. The matter was referred to the United States Attorney for prosecution.

The 2008 conviction for misdemeanor battery arose from a dispute between Triggs and his then-girlfriend Nicole

Oblak.[1] According to the incident report, on September 22, 2008, a Juneau County sheriff's deputy responded to a domestic-abuse call from Oblak. She told the deputy that she and Triggs were not getting along so she had moved out to stay with a friend for a few days. When she returned to her residence to collect some belongings, Triggs begged her to stay and erupted in a fit of rage when she refused: he backed her up against a counter and squeezed her neck and throat, causing her to have difficulty breathing. He also broke two windows and damaged and stole items of her property.

The sheriff's office referred the incident to local prosecutors as a felony strangulation/suffocation offense, but the assistant district attorney charged it as a misdemeanor battery in violation of sections 940.19(1) and 968.075 of the Wisconsin Statutes. The former statute is Wisconsin's simple battery offense. The latter imposes certain requirements on law-enforcement officers and prosecutors when confronted with incidents involving domestic abuse: the statute establishes a mandatory arrest rule—officers *must* arrest a suspect when there are reasonable grounds to believe that domestic abuse has occurred—and requires prosecutors to make swift charging decisions. The statute also imposes an automatic no-contact order, barring the defendant from contacting the victim within 72 hours of arrest.

---

[1] In addition to this conviction, Triggs has a lengthy history of arrests from 2003 to the seizure of his firearms in 2015, some of which resulted in misdemeanor convictions and others in civil citations for ordinance violations. In addition to the 2008 battery conviction, Triggs has four other misdemeanor convictions: two for bail jumping (one in connection with the 2008 battery), one for issuing a worthless check, and one for disorderly conduct.

In addition to the battery count, the criminal complaint charged Triggs with three other misdemeanors: theft, criminal damage to property, and bail jumping (for violating the terms of his release on an earlier misdemeanor charge).

Triggs represented himself in the case. In plea negotiations the prosecutor offered to dismiss the theft and property-damage counts if Triggs would plead no contest to the battery and bail-jumping counts. The prosecutor also agreed to recommend a withheld sentence and 18 months of probation. Triggs accepted the deal. He filled out and signed a waiver-of-counsel form and a plea questionnaire and entered no-contest pleas to battery and bail jumping. The judge accepted the waiver of counsel and no-contest pleas and placed Triggs on probation for 18 months, as the prosecutor recommended. The remaining counts were dismissed. The judgment of conviction includes a domestic-abuse surcharge as part of Triggs's court costs. *See* WIS. STAT. § 973.055.

Based on this 2008 misdemeanor battery conviction, in May 2016 a federal grand jury returned a one-count indictment against Triggs alleging a violation of § 922(g)(9) stemming from his possession of the hunting rifles in November 2015. Triggs moved to dismiss the indictment, raising an as-applied Second Amendment challenge to the prosecution. His argument was largely based on the age of the predicate conviction—it was more than ten years old—but Triggs also pointed to certain mitigating factors in his case, his personal characteristics, and social-science data to support his constitutional defense. After an evidentiary hearing, the judge denied the motion.

Triggs then entered a conditional guilty plea, reserving his right to appeal the Second Amendment ruling. The Supreme Court issued *Rehaif* before Triggs's opening brief was due, so his appeal raises both the Second Amendment issue and a new claim of *Rehaif* error.

## II. Discussion

We begin (and end) with the *Rehaif* error. Triggs asks us to permit him to withdraw his guilty plea because *Rehaif* announced a new understanding of the elements of the crime of unlawful firearm possession under § 922(g)—namely, that the government must prove not only that the defendant knew he possessed a firearm *but also* that "he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. This issue is necessarily new on appeal, so we review it for plain error. *United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020).

Under the plain-error standard, Triggs must establish that the *Rehaif* error is clear or obvious and affected his substantial rights; if he does so, we may correct the error if it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* The government concedes that the *Rehaif* error is clear. *See* FED. R. CRIM. P. 11(b)(1)(G) (requiring a judge to inform a defendant of "the nature of each charge to which [he] is pleading"). We focus our analysis on the question of prejudice—whether the error affected Triggs's substantial rights. The prejudice element of plain-error review requires Triggs to establish a reasonable probability that but for the error, the result below would have been different—more specifically, that he would not have pleaded guilty to the § 922(g)(9) charge if he had known

about the effect of *Rehaif*. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Before addressing this question, we pause to note that some important follow-on *Rehaif* issues are now resolved in this circuit, with implications for this appeal. For example, Triggs argues that *Rehaif* errors should be considered structural and thus automatically prejudicial. We recently rejected that argument in *United States v. Maez*, 960 F.3d 949, 957–58 (7th Cir. 2020). Our decision in *Maez* also answered a lingering question about the scope of the *Rehaif* knowledge element: does § 922(g) as interpreted in *Rehaif* require the government to prove only that the defendant was aware of his status—e.g., knew he had a felony conviction, *see* 18 U.S.C. § 922(g)(1), or a conviction for a misdemeanor crime of domestic violence, *id.* § 922(g)(9), etc.—or must the government prove that the defendant knew "*it was a crime to possess a firearm* as a result of [his] prohibited status?" *Maez*, 960 F.3d at 954.

We rejected the latter reading of *Rehaif* because it would impermissibly gloss the term "knowingly" in this statutory scheme with a willfulness requirement. *Id.* Instead, we understood *Rehaif* to hold that § 922(g) requires the government to prove that the defendant knew he had the relevant status, *not* that he knew he was legally barred from possessing firearms. *Id.* at 955. Finally, we confirmed in *Williams* that "the burden of persuasion rests on the defendant seeking to withdraw his plea based on a *Rehaif* error." 946 F.3d at 973.

Applying these understandings here, it's now clear that to convict Triggs at trial, the government had to prove that he knew he had been convicted of a "misdemeanor crime of

domestic violence" as that phrase is defined for purposes of § 922(g)(9) (though *not* that he knew he was barred from possessing firearms). So to establish prejudice from the *Rehaif* error, Triggs must establish a reasonable probability that he would not have pleaded guilty had he known of the government's burden to prove this element. *Id.* at 971. In assessing whether he has done so, we can "fairly ask" what Triggs might have thought he stood to gain by insisting on a trial, though we will not "second-guess" a defendant's own guilty-plea calculus "if the record shows it is reasonably probable that he would have taken a chance at trial, even foolishly." *Id.* at 973.

Many prosecutions under § 922(g) involve violations of subsection (1), the felon-dispossession provision, which prohibits firearm possession by any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." Under this simple definition, a defendant will have difficulty establishing prejudice from a *Rehaif* error because the new knowledge element is quite easy to prove, especially when the defendant previously served more than a year in prison. *Id.* As we explained in *Williams*, a defendant who previously served more than a year in prison for a single conviction "cannot plausibly argue that he did not know his conviction had a maximum punishment exceeding a year." *Id.* A defendant in that situation "will face an uphill battle to show that a *Rehaif* error in a guilty plea affected his substantial rights" because the new understanding of the knowledge element doesn't materially change the guilty-plea calculus. *Id.* at 974; *see also United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020)

The same cannot be said of Triggs. Unlike the straight-forward definition in the felon-dispossession provision, the definition of the term "misdemeanor crime of domestic violence" as used in § 922(g)(9) is quite complex:

(33)(A) [T]he term "misdemeanor crime of domestic violence" means an offense that—

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

> **(bb)** the person knowingly and intelli-
> gently waived the right to have the case
> tried by a jury, by guilty plea or otherwise.

18 U.S.C. 921(a)(33) (in part).

Given the comparative complexity of this definition, the guilty-plea calculus changes. *Rehaif* improves Triggs's trial prospects, giving him at least a plausible argument that he was unaware that his 2008 battery conviction is a crime of this nature. At the time of his guilty plea, he was facing trial without a clear defense as to any of the elements of § 922(g)(9) as they were then understood. The Supreme Court's clarification of the elements of this crime means that the government must prove a new and—in the case of § 922(g)(9)—burdensome knowledge element. *Rehaif* opens a potentially viable avenue of defense.

Beyond the complexity of the statutory definition, the messy nature of the proceedings that led to Triggs's 2008 conviction makes the government's burden on the *Rehaif* element that much more challenging. First, and importantly, Triggs did not have a lawyer. Though he signed a waiver-of-counsel form and the judge conducted an on-the-record colloquy before accepting it, the fact remains that Triggs did not have the assistance of legal counsel to explain the elements of the offense or the implications of his no-contest plea.

The criminal complaint, moreover, was entirely conclusory and not quite correct, labeling the charge "misdemeanor battery, domestic abuse" when there is no such crime in Wisconsin. Instead, the crime charged in the complaint is simple battery in violation of section 940.19(1) of the

Wisconsin Statutes. Although section 968.075 was also cited, that statute, as we've explained, does not add any elements to the simple battery offense; rather, it imposes certain duties on the police and prosecutors when domestic abuse is suspected.

Compounding the government's proof problems, the plea questionnaire that Triggs signed and submitted was woefully incomplete and unclear. The questionnaire has a box for the defense attorney to enter the crime to which the defendant intends to plead guilty or no contest. The box is empty; the offense of battery is not named, the relevant statute is not cited, and the elements of the crime do not appear anywhere on the form. (Nor is bail jumping mentioned.) A two-page document listing the elements of some common criminal offenses is attached to the questionnaire. The elements of battery are listed on this document, but the corresponding checkbox is not marked and there is no indication whatsoever that the elements were made known to Triggs.

The transcript of the plea hearing reflects that the judge conducted only a brief and perfunctory colloquy before accepting Triggs's no-contest pleas. The judge did not advise him of the elements of either of the offenses to which he was pleading no contest. Nor did the judge mention a firearm prohibition.

We do not mean to suggest that Triggs's underlying battery conviction was procedurally invalid. But the record of these proceedings is important evidence of whether Triggs knew that he had been convicted of a misdemeanor crime of domestic violence as defined in § 921(a)(33). It is unclear whether Triggs was *ever* properly notified of the nature of

the battery charge or its required elements. These shortcomings in the state-court proceedings make the *Rehaif* element harder to prove. Triggs has a colorable argument that he was unaware that he was convicted of a misdemeanor crime of domestic violence as that term is used in § 922(g)(9).

To be sure, the record contains evidence that works against Triggs on the *Rehaif* element, including the fact that he tried to buy a gun since the 2008 conviction and was turned down. But it's not necessary to weigh Triggs's likelihood of success at trial. "[T]he reasonable probability standard is not the equivalent of a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Williams*, 946 F.3d at 973 (quotation marks omitted). What matters is that in light of *Rehaif*, he has a plausible defense. Triggs has carried his burden to establish a reasonable probability that he would not have pleaded guilty had he known of the government's *Rehaif* burden.

This is a proper case to exercise our discretionary authority to correct an unpreserved error. A conviction entered on an unknowing guilty plea violates "the first and most universally recognized requirement of due process"—namely, that a defendant receive "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quotation marks omitted). Accordingly, we VACATE the judgment and REMAND for further proceedings.