In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1326

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS L. GOLIDAY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-CR-00331 — **James P. Hanlon**, *Judge.*

_____

ARGUED APRIL 27, 2022 — DECIDED JULY 15, 2022

_____

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Thomas Goliday sold drugs in Indianapolis, found himself facing federal charges, and chose to plead guilty to three counts of possession and one count of conspiracy to distribute heroin. Confusion as to this latter charge emerged during the plea proceeding, however, with Goliday making statements suggesting he did not understand how a conspiracy offense differed from just buying and

selling drugs. The facts acknowledged during the plea offered no clarity on the point either and, even more, the district court did not follow up to resolve the confusion. Some step should have been taken to ensure not only that Goliday understood the nature of the charged conspiracy offense, but also that there was a factual basis for the guilty plea. On the record before us, then, we cannot avoid the conclusion that it was plain error for the district court to accept the plea.

## I

In late September 2018 a team of officers from both the Indianapolis Metropolitan Police Department and the federal Drug Enforcement Agency executed a search warrant at Thomas Goliday's home in Indianapolis, recovering assorted drugs and a loaded handgun. Goliday, who arrived home during the search, waived his *Miranda* rights and agreed to speak to the officers. He admitted that the drugs and gun found in the home were his. Apparently seeking to cooperate with the investigation in hopes of obtaining more lenient treatment from prosecutors, Goliday told the officers that he had bought two ounces of heroin every week for the last year from the same supplier. He explained that he would then resell the heroin in smaller amounts to users.

Federal narcotics charges followed. A superseding indictment charged Goliday with three counts of possession with intent to distribute drugs—one count each for the fentanyl, methamphetamine, and crack cocaine recovered from his home. See 21 U.S.C. § 841(a)(1). Goliday's attempted cooperation did not pan out—indeed, from his perspective, it backfired. In the government's view, his statements to police regarding his heroin purchases supplied the basis for an additional charge. Adding together the weekly two-ounce

purchases from his supplier, the indictment charged Goliday with conspiring to distribute more than 1,000 grams of heroin. See *id.* §§ 841(a)(1), 846. Alongside these charges, the government filed an information under 21 U.S.C. § 851 notifying Goliday that, based on a prior felony drug conviction, he faced an enhanced sentence if convicted here.

Goliday decided to plead guilty to all charges. Without the conspiracy charge, he would have faced a statutory minimum sentence of 10 years and a maximum of life. But the conspiracy charge, as enhanced by Goliday's prior conviction, carried a statutory minimum of 15 years, or 180 months. See *id.* § 841(b). Accordingly, while the federal Sentencing Guidelines recommended a sentence between 168 and 210 months, the addition of the conspiracy charge narrowed that range to 180 to 210 months.

Goliday's plea hearing got off to a sound start. The district court confirmed he was feeling well, wanted to plead guilty, and understood that by doing so he was giving up important constitutional rights. The district court then set about fulfilling its obligations under Federal Rule of Criminal Procedure 11 to describe the charges to which Goliday was pleading guilty and to ensure there was an adequate factual basis for concluding he committed each offense.

The district court began with the § 846 charge for conspiracy to distribute heroin. The court explained that, to secure a conviction at trial, the government would have to prove that (1) "the alleged [heroin] conspiracy … existed," that it (2) "involved 1,000 grams or more" of heroin, and that (3) Goliday "knowingly and intentionally became a member of that conspiracy." Goliday said he understood these elements.

The government then read into the record what it viewed as the factual basis for Goliday's plea to the conspiracy charge: "Through investigation, officers learned that Goliday had been receiving 2 ounces of heroin a week for a year from a coconspirator, [totaling] in excess of 1,000 grams of heroin, which heroin he then resold to others in exchange for financial remuneration."

When the district court asked Goliday if these facts were true and accurate, the following exchange occurred:

> GOLIDAY:    Not the 1,000 grams.
>
> COURT:      Not the what, I'm sorry?
>
> GOLIDAY:    The 1,000 grams.
>
> COURT:      Well, let me ask you this, do you agree that the government would be able to prove those facts that [it] just read into the record at a trial beyond a reasonable doubt if this case were to go to trial?
>
> GOLIDAY:    I don't see how. There was a statement that I made to the authorities to help them with my supplier to help him get convicted. The statement that I made to the police was just to tell them where I was getting my drugs from and that boosted that quantity up like that. I didn't have that much drugs. I only had 80 grams of dope in my house at that time. The 1,000 grams, I made a statement to the agents telling them that they can go bust this guy and get the drugs from him and they asked me how much I was getting from this guy and I told them and they turned around and used that to

boost my quantity up and put me in a conspiracy because when I first got locked up it wasn't a conspiracy at all.

COURT: Okay. Well, the question, then, is that there is no allegation that you had 1,000 grams or more of a mixture or substance that contained a detectable amount of heroin. It alleges that there was a conspiracy to possess with intent to distribute and to distribute heroin and that the conspiracy involved 1,000 grams or more.

GOLIDAY: Yes, sir.

COURT: And is that true?

GOLIDAY: Yes, sir.

COURT: Okay. And the facts otherwise set forth in the factual basis [the government] read are accurate and true?

GOLIDAY: Yes, sir.

On the basis of this exchange, the district court found a sufficient factual basis for Goliday's guilty plea to the conspiracy charge. So, too, did the district court find sufficient factual support for Goliday's plea to the three § 841(a)(1) substantive drug possession charges. The district court then sentenced Goliday to four concurrent terms of imprisonment of 180 months or 15 years—the statutory minimum sentence for the conspiracy charge.

Goliday now appeals, arguing that the district court should not have accepted his plea to the conspiracy charge. The district court, Goliday contends, committed a twofold

error by not ensuring he understood the nature of the conspiracy charge and not confirming the existence of facts sufficient to demonstrate a conspiracy with his heroin supplier.

## II

Rule 11(b) of the Federal Rules of Criminal Procedure requires district courts to adhere to a series of obligations before accepting a criminal defendant's guilty plea. Two of those requirements are relevant here. To begin with, "the court must inform the defendant of, and determine that the defendant understands," the "nature of each charge" to which he wishes to plead guilty. Fed. R. Crim. P. 11(b)(1)(G). Doing so is essential to ensure compliance with the due process requirement that a defendant's guilty plea be "truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969).

But that is not the end of the matter. Beyond ensuring that a defendant understands the charges against him, a district court may not enter judgment on a guilty plea until it has made an independent judicial determination "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The failure to substantially comply with either of these requirements may be grounds for vacating the plea, so long as the error is not harmless. See Fed. R. Crim. P. 11(h); *United States v. Blalock*, 321 F.3d 686, 688–89 (7th Cir. 2003) (requiring only substantial compliance with, not literal adherence to, the commands of Rule 11).

Still, because Goliday did not object to the factual basis or move to withdraw his guilty plea in the district court, we review the court's compliance with Rule 11 in accepting his plea only for plain error. See *United States v. Vonn*, 535 U.S. 55, 59 (2002); Fed. R. Crim. P. 52(b). To win relief under this exacting

standard, Goliday must show that the district court committed an error that was "clear or obvious," that prejudiced his substantial rights, and that "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Triggs*, 963 F.3d 710, 714 (7th Cir. 2020).

Goliday clears this high bar. We have reviewed the plea colloquy several times, and each time we come away with the same impression—confusion. Even under plain error review, we cannot say that Goliday understood the nature of the conspiracy charge against him or that the district court had an adequate factual basis for accepting his plea.

A

Start with the district court's threshold obligation to ensure that Goliday understood the nature of the charges against him. See Fed. R. Crim. P. 11(b)(1)(G). Because a guilty plea is an admission to each element of a criminal charge, due process requires a defendant to understand "the elements of the crime" with which he is charged. *United States v. Schaul*, 962 F.3d 917, 922 (7th Cir. 2020). Accordingly, "[w]hen there is general confusion over the elements of the crime with which a defendant is charged, the resulting guilty plea cannot stand." *Id.*

Defendants may be particularly susceptible to misunderstanding the elements of a drug conspiracy under § 846, which we have called "a complex charge not always or easily understood by a layperson." *United States v. Neal*, 907 F.3d 511, 514 (7th Cir. 2018). This is so in large part because of a fine but crucial distinction regarding the core element of a criminal conspiracy—agreement. Time and again we have underscored that proof of an ordinary buyer-seller

relationship alone is insufficient to support a conviction under § 846. See *id.* at 515 (citing *United States v. Long*, 748 F.3d 322, 325 (7th Cir. 2014)). As the Supreme Court has explained, "[t]he essence of conspiracy is the combination of minds in an unlawful purpose." *Smith v. United States*, 568 U.S. 106, 110 (2013) (cleaned up). In that light, "ordinary drug transactions do not entail or reflect conspiracy, for the buyer's only purpose is to buy and the seller's only purpose is to sell: the buyer and seller lack a *shared* criminal goal." *Neal*, 907 F.3d at 515 (emphasis in original).

This explains why our cases have emphasized that a § 846 conviction requires "evidence of an agreement to commit a crime *other than* the crime that consists of the sale [of drugs] itself." *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010) (cleaned up); *United States v. Vizcarra-Millan*, 15 F.4th 473, 506 (7th Cir. 2021) (explaining that the government must prove "that the defendant knowingly agreed, perhaps implicitly, with someone else to distribute"—not just to purchase—"drugs"); *United States v. Duran*, 407 F.3d 828, 835 (7th Cir. 2005) (setting out two elements of a § 846 conviction: "(1) two or more people agreed to commit an unlawful act, and (2) the defendant knowingly and intentionally joined in the agreement"). Our pattern jury instructions follow suit. See *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 5.10(A) (2020 ed.) (requiring the government to "prove that the buyer and seller had the joint criminal objective of further distributing [controlled substances] to others").

Against this backdrop, it is clear that a defendant charged with conspiracy under § 846 cannot be found to understand the "nature of [the] charge" if he does not evince some

acknowledgement that conviction requires proof of a joint criminal purpose beyond a mere buyer-seller relationship. Fed. R. Crim. P. 11(b)(1)(G).

But where Rule 11 demands clarity, our review of the plea colloquy reveals "general confusion." *Schaul*, 962 F.3d at 922. At the outset of the hearing, the district court told Goliday that to prove the conspiracy charge, the government would have to show:

> first that the alleged conspiracy with intent to distribute and to distribute controlled substances existed; second, that [he] knowingly and intentionally became a member of that conspiracy; and last, that the conspiracy involved 1,000 grams or more of a mixture or substance containing a detectable amount of heroin.

The district court's explanation is accurate as far as it goes, but on this record it did not go far enough. According to the district court, the first element of a § 846 conspiracy is that the "conspiracy … existed." That might have sufficed if, in the totality of the circumstances, other portions of the plea colloquy gave us comfort that Goliday understood the charge against him. But we know from what Goliday later said that he harbored significant confusion about perhaps the key element of the conspiracy charge: "an agreement [between Goliday and his supplier] to commit a crime *other than* the crime that consists of the sale itself." *Johnson*, 592 F.3d at 754 (cleaned up).

After the government read its proffered factual basis into the record, Goliday spoke up. He told the district court that he did not understand how he could be liable for the full 1,000 grams involved in the alleged conspiracy, maintaining

that he only had "80 grams … in [his] house" and that he had only mentioned the 1,000-gram amount in a statement to investigators "to help them [convict his] supplier"—so they could "go bust this guy and get the drugs from him."

Goliday's statements to this point reflect a two-fold misunderstanding. First, he did not appreciate that he faced charges for entering into a more wide-reaching partnership with his supplier beyond an agreement to buy particular quantities of heroin. Second, he did not understand the consequences of conceding that point—that he would be held legally responsible for *all* drug amounts traceable to that illegal agreement, not just those quantities he possessed at the time of his arrest.

The district court seemed to sense Goliday's confusion. Indeed, the court responded by explaining that the government's allegation was not that he personally possessed or sold 1,000 grams, but rather only that "there was a conspiracy" to distribute that amount of heroin. But while the court was right to pause on this point, in our view its explanation did not go far enough. Clarifying that the heightened drug quantity was attributable to a conspiracy rather than to simple possession was surely helpful. But we are not assured that these statements adequately informed Goliday of the government's obligation to prove the agreement at the heart of the conspiracy. Without the court taking that additional step, the record remained as murky as it was before the attempted clarification on the key question before us: whether Goliday understood the nature of the charges against him.

Rule 11 required more in these circumstances. On the totality of the facts before us, we cannot conclude that Goliday understood "the nature of [the conspiracy] charge" to which

he was attempting to plead guilty. Fed. R. Crim. P. 11(b)(1)(G). Faced with Goliday's evident confusion on this crucial point, Rule 11 required the district court to tap the brake pedal and slow things down a touch to ensure that Goliday knew what he was accepting responsibility for. And to our eye, not doing so reflected "clear [and] obvious" error. *Triggs*, 963 F.3d at 714. Proceeding a shade slower to develop the requisite factual record is a small price to pay for avoiding a plea that is not "truly voluntary." *McCarthy*, 394 U.S. at 465.

B

We see a similar error with respect to the district court's Rule 11(b)(3) obligation to ensure a sufficient factual basis for accepting Goliday's guilty plea on the conspiracy count. Recall that a conspiracy conviction requires proof of a criminal agreement beyond the confines of an ordinary buyer-seller relationship. See *Neal*, 907 F.3d at 515. To be sure, the government may show the requisite agreement with circumstantial evidence, such as evidence of "sales on credit or consignment" or other circumstances suggesting a "unity of enterprise" between buyer and seller. *Id.* at 515–16 (quoting *Johnson*, 592 F.3d at 755–56). But purchases alone will not suffice.

Yet purchases alone are all the government represented it has in this case: the government's proffered factual basis asserted that Goliday "had been receiving two ounces of heroin a week for a year from a coconspirator," which he then "resold to others in exchange for financial remuneration." The government contends this evidence of regular purchases of large quantities of heroin suffices to create a factual basis for Goliday's conspiracy plea.

We have rejected the argument before and do so again to-day. A prosecution based "only on evidence that a buyer and seller traded in large quantities of drugs, used standardized transactions, and had a prolonged relationship" leaves the jury to "choose between two equally plausible inferences"—a conspiracy and an ordinary buyer-seller relationship are equally likely. *Johnson*, 592 F.3d at 755. With the evidence thus "essentially in equipoise," we have said, "the jury must acquit" in the absence of "some other evidence of a conspiratorial agreement to tip the scales." *Id.*; see also *United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008) (rejecting the argument that any "wholesale customer of a conspiracy is a co-conspirator per se"). We see no reason these principles fail to apply in the context of evaluating a factual basis for a plea under Rule 11.

The government points to one additional piece of evidence that it says tips the scales in favor of conspiracy: Goliday's failure to object to the government's use of the word "coconspirator"—both in the presentence investigation report and in the proffered factual basis—to refer to his heroin supplier. As the government sees things, that failure amounted to an admission by Goliday that he and his supplier were in fact engaged in a conspiracy.

That assertion brings us back to the district court's first shortcoming—not assuring Goliday understood the elements of a conspiracy. If Goliday operated on the mistaken understanding that an ordinary buyer-seller relationship sufficed to show a drug conspiracy—and nothing in the record indicates he was under any different impression—his acquiescence in the government's use of the term "coconspirator" to refer to his supplier is not surprising. Nor does it change the fact that

the existence of a coconspirator (and, thus, of a conspiracy) is a legal conclusion which the government would have had to prove beyond a reasonable doubt at trial. Criminal defendants, in short, "may not stipulate to legal conclusions in plea agreements." *In re Sealed Case*, 936 F.3d 582, 590 (D.C. Cir. 2019).

On the record before us, we see no way to avoid the conclusion that the district court plainly erred by accepting Goliday's plea without an adequate factual basis.

### C

On plain error review, the mere existence of these Rule 11 errors does not entitle Goliday to relief. He must also convince us that these errors affected both his substantial rights and "the fairness, integrity, or public reputation of the judicial proceedings." *Triggs*, 963 F.3d at 714.

To demonstrate that the Rule 11 errors affected his substantial rights, Goliday must show a reasonable probability that, but for the errors, he would not have pled guilty to the conspiracy charge. See *United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2007) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)). We look to the entire record to determine whether he made this showing, see *Dominguez Benitez*, 542 U.S. at 83, and conclude that he did so.

Had Goliday understood the elements of conspiracy, he would have known that the government would have to prove beyond a reasonable doubt at trial that he agreed to join a criminal enterprise involving more than his individual drug purchases. Yet we see no evidence from the proffered factual basis for the plea indicating how the government could meet this burden.

Given this evidentiary void, Goliday's confusion about his liability for the 1,000 grams should have signaled to the district court that he did not understand he was part of a joint criminal enterprise with his supplier. It follows that there exists a reasonable probability that he would have assessed his strategic position at trial differently had he understood the government's evidentiary burden and its apparent lack of evidence on the key element of agreement. See *id.* at 85; see also *Triggs*, 963 F.3d at 717 (finding a reasonable probability that the defendant would not have pled guilty had he known that to convict him of unlawful firearm possession, the government had to prove he knew he belonged to the relevant category of persons barred from possession). This is especially so because the conspiracy charge increased Goliday's sentencing exposure, including by requiring the imposition of a mandatory minimum 15-year sentence and increasing the floor of his advisory Guidelines range from 168 to 180 months.

That leaves the question whether the error is so serious as to impugn the "fairness, integrity, or public reputation of the judicial proceedings" and justify the exercise of "our discretionary authority to correct an unpreserved error." *Triggs*, 963 F.3d at 717. We believe the answer is yes in the totality of what is before us here. The district court did not ensure that Goliday had "real notice of the true nature of the charges against him," which the Supreme Court has called "the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998). And its failure to ensure an adequate basis for the plea means the court may have allowed Goliday to plead guilty to an offense of which he is actually innocent. See *United States v. Olano*, 507 U.S. 725, 736 (1993). Neither error can stand.

*      *      *

For these reasons, we VACATE the conspiracy conviction under 21 U.S.C. § 846 and REMAND for further proceedings on that charge. Likewise, because the mandatory minimum sentence for the § 846 conviction may well have increased Goliday's sentence on the other three counts of conviction, we VACATE those sentences and REMAND for plenary resentencing.