In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1469

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADAM L. POWER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:23-cr-30037 — **Colleen R. Lawless**, *Judge.*

ARGUED JANUARY 27, 2026 — DECIDED MARCH 20, 2026

Before ST. EVE, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Adam Power pleaded guilty to thirty-four counts charging child pornography offenses, for which the district court sentenced him to sixty years' imprisonment. On appeal, he asks that we vacate his guilty pleas to eight of the counts for lack of a factual basis or, alternatively, vacate his sentence as substantively unreasonable. We affirm.

## I. Background

In late 2022 and early 2023, law enforcement in southern Illinois learned that thirteen separate Snapchat[1] accounts associated with the same Internet Protocol ("IP") address had distributed or received child pornography. Officers then discovered that these accounts used three additional IP addresses. After executing search warrants on the IP addresses and Snapchat accounts, police concluded that Adam Power was the man behind them. Law enforcement arrested Power and seized a number of devices from his bedroom in March 2023.

As their investigation proceeded, law enforcement pieced together Power's modus operandi. Power had created at least fourteen social media accounts, mostly on Snapchat, with female usernames. He then used these accounts to message minor boys and, while impersonating a girl, persuaded them to send nude photographs and videos of themselves. Power knew some of his victims from his positions of authority as a church choir director, substitute teacher, and day camp employee.

In January 2024, a federal grand jury returned a thirty-four-count superseding indictment against Power. The indictment charged eighteen counts of receipt of child pornography and eight counts of distribution of child pornography under 18 U.S.C. § 2252A(a)(2), seven counts of sexual exploitation of a child under § 2251(a), and one count of possession of child pornography under § 2252A(a)(5)(B). These counts included

---

[1] Snapchat is a social media application known for allowing users to send photos that disappear after a set number of seconds.

Power's offenses against thirteen minor male victims and one minor female victim (whose nude photo Power used to seduce the males).

In May 2024, Power entered an open guilty plea (one without a plea agreement) to all thirty-four counts. The court began his plea hearing by confirming Power was competent to understand the proceedings, capable of entering a knowing and voluntary plea, had an adequate opportunity to discuss his case with counsel, was satisfied with his attorney's advice, and understood the charges against him through discussion with his attorney. The government then presented the factual basis underlying each of Power's pleas. Power confirmed this factual basis accurately represented his conduct. The court then attempted to recap the government's factual basis, but it missed some counts. Between the number of counts and—because there was no written plea agreement—the court's lack of access to the factual basis prior to the hearing, the court explained it would be challenging to restate each count's factual basis. So the court asked Power to reaffirm that he had listened to the government's factual basis and agreed with every detail, which he did. The court accordingly found Power's pleas "supported by an independent basis in fact."[2]

In advance of sentencing, the probation office prepared a presentence investigation report ("PSR") extensively setting forth the evidence underlying the charges and computing

---

[2] While there is no one way to find a factual basis, *see* Fed. R. Crim P. 11(b)(3) advisory committee note to 1966 amendment, district courts confronted with unusual cases like this one might consider taking additional measures to ensure they keep track of the factual basis underlying each count.

Power's Sentencing Guidelines. The Guidelines's grouping rules shaped the Guidelines calculation. *See* U.S.S.G. § 3D1. Under § 3D1.1 and § 3D1.2, Power's seven counts for sexual exploitation of a child were not grouped, but his twenty-seven other counts formed one group. The grouped counts had an adjusted offense level of 47—a base of 22, plus 25 from a bevy of enhancements. *See id.* § 2G2.2. Because the highest adjusted offense level among the non-grouped counts was 38, which "is 9 or more levels less serious than the Group with the highest offense level," none of the non-grouped counts factored into Power's total offense level. *Id.* § 3D1.4(c). From there, the PSR added the remaining enhancements (five levels) and subtracted the remaining reductions (three levels), leaving Power's total offense level at 49. That meant Power's was one of the "rare cases" where "a total offense level of … more than 43 [resulted] from application of the guidelines"; in such cases the offense level is "treated as an offense level of 43." *Id.* ch. 5, pt. A, cmt. n.2. That offense level equates to a Guidelines range of life imprisonment, regardless of one's criminal history. *See id.* ch. 5., pt. A. But because no statute of conviction authorized a life sentence, the Guidelines range became 8,880 months (or 740 years)—the aggregate of the statutorily authorized maximum sentences for each count of conviction. *See id.* § 5G1.2(d). Neither party objected to the PSR, including the Guidelines calculation.

At sentencing, the government asked for a 100-year sentence, emphasizing the extent and nature of Power's manipulation of his victims. The defense, by contrast, requested a sentence near the 15-year mandatory minimum because of (among other things) Power's education, employment, lack of criminal history, and what defense counsel called "probably the most significant attribute or proof of his character, which

is he accepted responsibility for each and every one of the counts that the government charged him with."

The court sentenced Power to 60 years' imprisonment. In evaluating the 18 U.S.C. § 3553(a) factors, it called Power's crime "heinous," highlighting the number of victims and the persistence with which he targeted them. The court also stressed that Power "preyed on children that [he] knew, that [he] taught, that [he] directed." Power's various jobs, therefore, were not "redeeming"—as he suggested—but instead "the instrumentalities that [he] used to then perpetrate the crime." The court did not identify any significant mitigating circumstances in Power's history and characteristics. Ultimately, the court concluded that a 60-year term of imprisonment was sufficient but not greater than necessary to comply with the aims of sentencing and "adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment, and … protects the public from further crimes of Mr. Power, and hopefully affords adequate deterrence."

## II. Discussion

Power raises two claims on appeal. He first requests that we vacate his guilty pleas to eight of the counts, contending the court lacked an adequate factual basis for accepting them. In the alternative, he challenges his sentence as substantively unreasonable.

### A. Validity of Guilty Pleas

Federal Rule of Criminal Procedure 11 provides a defendant who pleads guilty with procedural protections. At issue here is Rule 11(b)(3), which requires the district court to ensure a sufficient factual basis for accepting a defendant's

guilty plea. Power contends the district court violated Rule 11(b)(3) in accepting his guilty pleas to counts one, four, twenty-three, and twenty-five through twenty-nine, which he asserts lacked adequate factual support. Because he concedes he neither objected to the factual bases for these counts below nor moved to withdraw his pleas to them, our review is for plain error. *See United States v. Goliday*, 41 F.4th 778, 782–83 (7th Cir. 2022) (citing *United States v. Vonn*, 535 U.S. 55, 59 (2002)). "To win relief under this exacting standard, [Power] must show that the district court committed an error that was 'clear or obvious,' that prejudiced his substantial rights, and that 'seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Id.* (quoting *United States v. Triggs*, 963 F.3d 710, 714 (7th Cir. 2020)).

We proceed directly to the substantial-rights prong. For Power to carry his burden of demonstrating prejudice in this context, he must show "a reasonable probability that, but for the error[s], he would not have entered the plea[s]." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). This burden, the Supreme Court has instructed, "should not be too easy for defendants in [Power's] position" to meet, not only because of "the policies that underpin Rule 52(b) generally" but also because of "the particular importance of the finality of guilty pleas." *Id.* at 82. In assessing whether Power has shown the requisite reasonable probability, "we 'can fairly ask … what he might ever have thought he could gain by going to trial,' though we will not 'second-guess a defendant's actual decision,' if the record shows it is reasonably probable that he would have taken a chance at trial, even foolishly." *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020) (quoting *Dominguez Benitez*, 542 U.S. at 85). We consider the entire record in evaluating a claim of prejudice. *Goliday*, 41 F.4th at 786.

Power's argument essentially consists of the bare assertion that he would not have pleaded guilty but for the errors he claims. But Power has not identified, and we do not see, anything in the record lending credence to this declaration. The record instead leaves Power a far cry from establishing a reasonable probability that he would have taken his chances at trial.

Consider Power's best-case scenario—acquittal on all eight challenged counts. Power would still face a Guidelines range of 560 years for the twenty-six counts of conviction, as opposed to 740 years for all thirty-four counts.[3] Both of these ranges amount to de facto life sentences. Indeed, Power's own brief stresses that "there is no difference between" sentences of this magnitude. And none of the eight challenged counts would impact Power's mandatory minimum sentence. These facts cut against his ability to show prejudice by making it "fair[]" to "ask" what Power "might ever have thought he could gain by going to trial." *Dominguez Benitez*, 542 U.S. at 85; *see Goliday*, 41 F.4th at 786 (finding a plain Rule 11(b)(3) error in part because it meaningfully impacted the defendant's sentencing exposure, "including by requiring the imposition of a mandatory minimum").

Of course, we are not at liberty to second-guess Power "if the record shows it is reasonably probable that he would have taken a chance at trial, even foolishly." *Williams*, 946 F.3d at 973. But it does not. The record instead supports that Power reasonably determined his best course was to plead guilty across the board, even without a plea agreement, to

---

[3] The 180-year difference represents the sum of the statutory maximums for the eight challenged counts.

demonstrate acceptance of responsibility and argue for a lower sentence based in part on his acceptance. Recall that at sentencing, Power's counsel emphasized that "what's probably the most significant attribute or proof of his character" is "he accepted responsibility for each and every one of the counts that the government charged him with." This also "lead[s] us to doubt" Power's assertion that he would have gone to trial. *Id.*

Notice, too, what the record does *not* contain. Power never expressed confusion, hesitation, or anything similar at his plea colloquy, factors that may tend to support a defendant's substantial-rights argument in this context. *See, e.g.*, *Goliday*, 41 F.4th at 786.[4] Nor did Power make any statements suggesting he misunderstood the elements of the offenses with which the indictment charged him. *See, e.g.*, *United States v. Aybar-Peguero*, 72 F.4th 478, 487 (2d Cir. 2023) (concluding a defendant demonstrated prejudice in this context where, at his plea hearing, he "was consistent and persistent in maintaining" that he did not possess the mens rea required under the statute of conviction). And no intervening caselaw undercuts the legal basis of his pleas. *See, e.g.*, *Triggs*, 963 F.3d at 717. To be sure, a defendant seeking to vacate his guilty plea need not identify any particular fact to demonstrate that an asserted error impacted his substantial rights. Power, however, does not

---

[4] Resisting this conclusion, defense counsel directs us to a portion of the plea colloquy in which the court asked Power whether he knew the victim underlying a particular count. Power expressed uncertainty because the prosecutor had not stated the victim's name, but he said "I would assume so." This uncertainty is immaterial, however, because whether Power knew the victim was not relevant to whether he committed the offense to which he pled guilty.

identify any part of the record that supports his assertion of
prejudice. This shortcoming is fatal.

**B. Substantive Reasonableness of Sentence**

We review a sentence's substantive reasonableness for
abuse of discretion. *United States v. De Leon*, 140 F.4th 920, 923
(7th Cir. 2025). That deference reflects the district court's "su-
perior position to find facts and judge their import under" 18
U.S.C. § 3553(a), the statute that guides a court's choice of sen-
tence. *United States v. Walsh*, 47 F.4th 491, 496 (7th Cir. 2022)
(quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). And it is
buttressed by the "nearly irrebuttable" presumption of rea-
sonableness that attaches to below-Guidelines sentences like
Power's. *United States v. Oregon*, 58 F.4th 298, 302 (7th Cir.
2023). To rebut that presumption, Power must "show[] that
the sentence does not comport with Section 3553(a)'s factors."
*United States v. Taylor*, 907 F.3d 1046, 1052 (7th Cir. 2018).

Power cannot carry that burden. He primarily argues that
the district court's sentence was substantively unreasonable
because it is a de facto life sentence, relying on empirical evi-
dence about prisoners' life expectancies. But Power's "argu-
ment that his life expectancy is less than his … prison term
does not rebut the presumption that the district court sen-
tenced him reasonably, because he never presented this argu-
ment (let alone data for it) to the district court." *United States
v. McDonald*, 981 F.3d 579, 581 (7th Cir. 2020).[5] And even if we

---

[5] Our conclusion that Power cannot show the district court imposed a
de facto life sentence necessarily resolves one of Power's other substan-
tive-unreasonableness arguments. Power contends the district court erred
in calling the 740-year Guidelines range inappropriate but then imposing

assume he received a de facto life sentence, "the district court adequately explained his sentence in a manner consistent with the § 3553(a) factors, which is all that was required." *Id.* at 581–82; *see United States v. Fitzpatrick*, 32 F.4th 644, 652 (7th Cir. 2022). The district court fairly characterized Power's crimes as "heinous." It also dismissed the mitigating evidence Power proffered as either aggravating (like his employment, which was an instrumentality of his crimes) or insubstantial (like run-of-the-mill childhood bullying). The court further concluded the sentence would adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from Power. Its sentence comports with § 3553(a)—and Power articulates no argument to the contrary.

Power also emphasizes the district court's remark at sentencing that two child pornography guideline enhancements worth a combined seven offense levels are "outdated" and "not beneficial for the courts when trying to arrive at an appropriate sentence." This statement makes his sentence substantively unreasonable, he explains, because the court sentenced him above what the Guidelines range would have been without those enhancements. This argument rests on a miscalculation; Power's Guidelines range would have been the same with or without these enhancements. Had they not applied, Power's adjusted offense level for the grouped counts would have been 40 instead of 47. At that point, counts 11 and 16—two of the non-grouped sexual exploitation

a functionally equivalent sentence. The argument that a 60-year sentence is functionally equivalent to a 740-year one, however, relies on the empirical evidence and arguments that Power failed to put before the district court.

counts, each of which had an adjusted offense level of 38—would have been within four offense levels of the grouped counts, triggering a two-level increase and bringing the combined adjusted offense level to 42. *See* U.S.S.G. § 3D1.4. The remaining enhancements and reductions, as before, would have then added a net of two offense levels, bringing Power's total offense level to 44—at which point the 43-level ceiling would be imposed, and Power would face the same Guidelines range of life imprisonment. *See id.* ch. 5, pt. A, cmt. n.2. And then, again as before, the Guidelines range would be 740 years because no statute of conviction authorized a life sentence.

Finally, Power argues that the court's sentence created impermissible disparities between him and median sex offenders and between him and median first-degree murder offenders. An unwarranted-disparity challenge to a below-Guidelines sentence is a "nonstarter." *United States v. Nania*, 724 F.3d 824, 840 (7th Cir. 2013); *see Oregon*, 58 F.4th at 304 ("[A] sentence below the applicable Sentencing Guidelines range cannot be an unwarranted disparity." (emphasis omitted) (quoting *United States v. Gonzalez*, 765 F.3d 732, 740 (7th Cir. 2014))). Because "the Sentencing Guidelines are themselves an anti-disparity formula," *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017), "a judge is not required to consult data, or conduct an empirical analysis, to confirm that a sentence is in fact consistent with similarly situated defendants," *Oregon*, 58 F.4th at 305.

\*     \*     \*

The judgment of the district court is

AFFIRMED.